JᴏʜɴS. MᴄLᴇᴀɴ, Executor, etc., Respondent, *v.* Aʟᴘʜᴇᴜꜱ H. Fʀᴇᴇᴍᴀɴ, Executor, etc., et al., Appellants.

| 70 | 81 |
|----|----|
| 154 | 645 |
| 70 | 81 |
| £161 | 76 |

An ulterior devise to take effect upon the defeasance of a former devise will take effect as well when the failure of the primary devise is by the happening of some event, such as the death of the devisee, during the life time of the testator, as by an event occurring after his death, by which the first devise, after it has taken effect, is defeated, unless the ulterior devise is so connected with and dependent upon the primary one that it cannot consistently with the provisions of the will have effect if the latter fails *ab initio*.

The will of J., after various bequests, devised and bequeathed one-fourth of his residuary estate to his executors in trust for the benefit of his son

A. during his life, with authority to the trustees, at their discretion, to transfer any part or all of said share to the *cestui que trust;* in case of the death of A, while any part of said share was held in trust, the same to go to his lawful issue; in case of his death without leaving lawful issue surviving, the same to go to the testator's daughter M. A. died before the testator, leaving no issue. In an action for a construction of the will, *held,* that there was no such necessary connection between the several and successive gifts as to make the last dependent upon the first; on the contrary each succeeding one was to be understood as intended to provide against a lapse or failure at any time or for any reason of those preceding; and that therefore M. was entitled to said share.

The holdings and judgment of the Special Term and of the General Term were in substantial accord with those of this court, on motion to amend the remittitur by giving costs in this court to all the parties litigating, payable out of the estate; *held,* that with two adverse judgments against them there was no reason why the appellants should not take the risks of further litigation, and that they were not entitled to costs.

Courts have no right to be liberal to suitors, in the matters of costs at the expense of estates of decedents, or of trust funds.

(Argued May 28, 1877; decided June 5, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department affirming a judgment entered upon a decision of the court at Special Term. (Reported below, 9 Hun, 246.)

This action was brought to obtain a construction of the will of John McLean, deceased. The testator, after various bequests, gave and devised to his son, John S. McLean, one-fourth part of all his remaining real and personal estate, and to his daughter, Mary J. Halsted, one other fourth part. He then gave to his executors one-fourth part of his estate in trust for his son, William T. McLean, and the remaining fourth part in trust for his son, Alexander W. McLean. These trusts were several, and each authorized the trustees to receive the rents, interest and income, and apply the same to the use of the sons, respectively. The testator then declared that he placed the two last-mentioned shares of his estate in trust for the benefit of his sons, respectively, "from an anxiety lest, from their youth and inexperience, they might waste the same, if the said shares were given to them or placed at their disposal absolutely." He therefore directed

that, if the trustees should, at any time in the life-time of either of his sons, be satisfied that he would make a prudent and proper use of the estate so held in trust for him, they should be authorized and empowered to convey or assign the whole or any part of the estate so held in trust to such son in their discretion; and to repeat such conveyance or assignments as often as they might think proper, until the whole should be so conveyed and assigned. The will then contains the following provisions:

"Tenth.—In case of the said death of either of my said sons, William or Alexander, while the whole or any part of the said shares so held in trust for them, respectively, shall continue to be so held in trust, and leaving lawful issue him surviving, then and in such case I give devise and bequeath to such lawful issue the said share, or such part thereof as may be then held in trust for the parent of such issue immediately upon his death.

"And, in case of the death of either of my said sons, William and Alexander, as above mentioned, without leaving lawful issue him surviving, then and in such case I give, devise and bequeath the said share, or such part thereof as may be held in trust for the one so dying, at the time of his decease, immediately thereafter, to his then surviving brothers and sisters, and the issue of any of them who may have previously died leaving issue, such issue in all cases to take the share or part their parent would have taken if he or she had been then surviving."

The testator afterwards executed a codicil to his will, which contained the following clause:

"Third.—I hereby revoke so much of the tenth section of my said will as gives, devises and bequeaths the share of either of my sons, William and Alexander, in case of his death without leaving lawful issue, to all his surviving brothers and sisters, and in lieu and instead thereof, I hereby give, devise and bequeath the share of each of my said sons, so dying without leaving lawful issue, or so much thereof as shall be held in trust for him at the time of his decease, to

my daughter, Mary J. Halsted, alone, and to her heirs and assigns forever, to her sole and separate use; and, in case of the death of the said Mary before the death of either of my said sons, William and Alexander (who shall so die without lawful issue), then and in that case I give, devise and bequeath to the lawful issue of the said Mary, who shall be then living, the said share so held in trust for my said son, who shall so die without issue, or all such parts of said share as may be held in trust for him at the time of his death. I hereby ratify and confirm my said will in all respects, except so far as the same is revoked or altered by this codicil."

Alexander W. McLean, one of the sons, died June 10th, 1871, unmarried and without issue. The testator died January 24th, 1873, leaving him surviving his widow, his daughter, Mary J. Halsted, and two sons, John S. and William T. McLean.

The question in the case was whether the testator died intestate as to the one-fourth part of his estate given and devised in trust for his son Alexander.

*Thomas H. Hubbard* and *Edward M. Shepard*, for the appellants. The legacy to Mrs. Halsted lapsed upon the death of Alexander W. McLean. (*Calthorpe* v. *Gough*, 3 Brown Ch., 395; *Doo* v. *Brabant*, 4 T. R., 706; *Humberston* v. *Stanton*, 1 V. & B., 385; *Williams* v. *Jones*, 1 Russ. Ch., 518; *Scott* v. *Chamberlayne*, 3 Ves., 302, 491; *Holmes* v. *Cradock*, id., 317; *Parsons* v. *Parsons*, 5 id., 581; *Carpenter* v. *Heard*, 14 Pick., 449; *Mowatt* v. *Carow*, 7 Paige, 336; *Cox* v. *Parker*, 22 Beav., 168; *Taylor* v. *Lambert*, 2 L. R. Ch. Div., 117; *Gray* v. *Pearson*, 6 H. L. C., 61; 1 Perry on Trusts, § 160; *Ackroyd* v. *Smithson*, 1 Brown Ch., 503; *Hawley* v. *James*, 5 Paige, 318, 320, 458, 462; *Easterbrooks* v. *Tillinghast*, 5 Gray, 17.)

*Henry L. Burnett* and *J. Langdon Ward*, for the respondent. There was no lapse of the legacy to Mrs. Halsted by

reason of the death of Alexander McLean. (*Downing* v. *Marshall*, 23 N. Y., 366, 370; *Norris* v. *Beyea*, 13 id., 273; *Mowatt* v. *Carow*, 7 Paige, 332; 1 P. Wms., 274; 1 Powell on Devises, 202; *Willing* v. *Baine*, 3 id., 113; *Darrel* v. *Molesworth*, 2 Vern., 378; *Miller* v. *Warren*, id., 207; *Ledsome* v. *Hickman*, id. 611; *Elliott* v. *Davenport*, 1 P. Wms., 83, 86, note; *Taylor* v. *Wendell*, 4 Bradf., 331; 2 Jarm. on Wills, 671; 1 id., 420; *Mackennin* v. *Peach*, Eng. Ch., 2 Keene, 555; *Le Jeune* v. *Le Jeune*, id., 701; *Gittings* v. *McDermott*, Eng. Ch. [2 M. & K.], 69; *Rheeder* v. *Own*, 3 B. C. C., 240; *Northey* v. *Burbage*, Prec. in Ch., 471; *Humphreys* v. *Howes*, 1 R. & M. Ch., 638; *Kane* v. *Astor*, 5 Sandf., 467; *Earl* v. *Grim*, 1 J. Ch., 494.)

Allen, J. The trust for the benefit of Alexander McLean, under the will of his father John McLean, failed *ab initio* by his death without issue during the lifetime of the testator. The particular trust, therefore, never took effect, and as no act or duty was to be performed by the trustees in the execution of the trust or in the transfer of the property which would have been the subject of the trust had it come into existence, either to Mrs. Halsted, the ultimate devisee and legatee, or the heirs at law and next of kin, as either the one or the other should be entitled, no estate vested in the trustees. (1 R. S., 729, §§ 60, 67; *Doe* v. *Edlin*, 4 A. & E., 582. The primary gift to trustees for the benefit of Alexander constituted no hindrance to the gift over upon the defeasance of that gift. (1 R. S., 729, § 61.)

An ulterior devise or a gift over to take effect upon the defeasance of a former devise, will take effect whether the failure of the primary devise is by the happening of some event, as the death of the devisee in the lifetime of the testator, so that the failure was absolute at the death of the testator, and the taking effect of the will, or by some event happening subsequently, and after the first gift has taken effect subject to the condition by which it is limited, and may be defeated. (*Norris* v. *Beyea*, 3 Kern., 273; *Mowatt*

v. *Carow*, 7 Paige, 328; *Downing* v. *Marshall*, 23 N. Y., 366.)

The testamentary gift for the benefit of Alexander, the son of the testator, could not take effect by reason of his death without issue in the lifetime of the testator, and the ultimate disposition of that portion of his estate in favor of Mrs. Halsted, took effect immediately on the death of the testator, and is the only effectual disposition of it unless by express terms or by necessary implication the devise to Mrs. H. is made to depend upon some condition to happen after the death of the testator, and after the taking effect of the prior gift to trustees for the benefit of the son. Unless the testator has so limited the ultimate devise to Mrs. H. as to connect it with and make it dependent upon the primary gift in a way that it cannot consistently with the provisions of the will have effect if the first gift fails *ab initio* by reason of the death of the object of the gift, Mrs. Halsted was the primary object of the testator's bounty at the time of his death, and is entitled to the property devised and bequeathed to her. It becomes then a question of intention to be judicially ascertained by an interpretation of the terms of the will in the application of established rules of construction with such extrinsic aids as are permissible. The intention of the testator is said to be the "pole star" or "sovereign guide" for the interpretation of testamentary instruments, but the rules for the ascertaining of such intention are certain and definite, and the intention is not a matter of arbitrary conjecture or surmise.

If the ultimate devise and bequest to Mrs. Halsted falls with and by reason of the failure of the primary gift, the same result would have defeated the provision for the children of Alexander had the latter died before the testator, leaving issue, and this intent will not be imputed to the testator, except so declared in terms or necessarily implied from the language of the will. The intent to disinherit his grandchildren by the happening of an event in no way connected with, or bearing upon his relation to, or desire to

provide for them, will not be presumed.  It is very evident
from the whole will and all its provisions that the testator
did not contemplate intestacy in respect to any portion of
his estate, and yet if the appellants are right he died intestate
as to one-fourth of his estate.  A testator is presumed to
calculate on the dispositions of his will taking effect, and
hence several and succeeding gifts of the same fund or prop-
erty will be considered as intended to take effect in their
proper order, each object of the testator's bounty to take
upon the failure of the prior dispositions, either *ab initio* or
at any time before it becomes indefeasible in the donee.

It must be conceded that, in framing the tenth clause of
the will, the testator had in his mind the probable survivor-
ship of his sons William and Alexander, and the primary
object of the limitation over upon a literal reading of the
will, was to provide for their death, after, by his own death,
the will should have taken effect, and the trust estate vested
in the trustees.  The third clause of the codicil is engrafted
upon and made a part of the tenth clause of the will, and
the language of both is based upon the same calculation of
the continuance of the lives of the first beneficiaries beyond
that of the testator.  The phraseology of the provision
applies primarily and obviously to that contingency, but it is
not necessarily repugnant to a more enlarged and reasonable
interpretation, and as providing for a lapse or failure of the
first gift *ab initio*.  Although the will takes effect, and speaks
from the death of the testator, yet in ascertaining the intent
of the testator, it may be considered as speaking qualifiedly
at the time of its execution, and to the trust proposed to be
created, considered as existing as it did in the mind and
intention of the testator from that time, and in that view the
estates were held in trust at the time of the death of Alex-
ander.  The language of wills are not to be subjected to
astute criticism, or a literal interpretation.  The terms of the
will indicate an intention to give this one-fourth part of the
estate; first, for the benefit of his son Alexander; secondly,
upon his death, before the estate should have indefeasibly

vested in him, to any issue he should leave him surviving, and thirdly, upon his death, without issue, before the absolute vesting of the estate to Mrs. Halstead. There was no necessary connection between these several and successive gifts, or in the relation of the testator to the several contemplated beneficiaries, or in the circumstances of the case, which would connect these dispositions, and make either of the two latter to depend upon the life of the first beneficiary, so that the trust in his favor should come into actual existence. On the contrary, the successive gifts must be reasonably understood as intended to provide against a lapse or failure of the preceding gifts at any time and for any reason.

The clause should, therefore, to carry out the intent of the testator, be read as if the limitations over had been in terms to take effect upon the death of Alexander, before the termination of the trust, by the conveyance of this portion of the estate, by the trustees to him, or upon the failure of the gift to the son. The clause may be so read without doing violence to the language of the will. The gift to the issue of Alexander, and failing such issue, to Mrs. H., were not limited upon the trust in favor of Alexander, or expressly conditioned upon the actual existence of that trust, but were substituted for the trust in the event of its defeasance before it was fully executed and terminated by a transfer to the donee. That was the substance of the limitation of the devise over to the ultimate donees. This interpretation is warranted by the well-established rule requiring effect to be given to the intent of a testator, irrespective of the particular phraseology of the will, when not repugnant to the terms of the instrument, and is supported by authority. (*Pearsall* v. *Simpson*, 15 Vesey, 29; *Hutton* v. *Simpson*, 2 Vern., 722; *Crosby* v. *Wendell*, 6 Paige, 548; *Meadows* v. *Parry*, 1 Ves. & B., 124; *Murray* v. *Jones*, 2 Ves. & B., 313; *Mackinnon* v. *Sewell*, 5 Sim., 78; *Avelyn* v. *Ward*, 1 Ves. Sen., 420; *Bainbridge* v. *Cream*, 16 Beavan, 25.)

Some of the reported decisions are supposed to be in conflict with those referred to, and with the conclusions to which

I have been led in this case. *Doe* v. *Brabant*, 4 T. R., 706; S. C., 3 Brown's Chy. R., 393, and *Calthorpe* v *Gough*, id. 395, in notes, are leading cases quoted as adverse to *Avelyn* v. *Ward*, and other cases holding with it, and Lord THUR-LOW, in *Doe* v. *Brabant*, regarded *Calthorpe* v. *Gough* as over-ruling the prior decisions. But Mr. JARMAN thinks they are reconcilable, and that both may stand upon principle. *Avelyn* v *Ward*, and the principle there decided, is fully recognized in subsequent cases. (2 Jar. on Wills, 710.)

It may be difficult to harmonize all the reported decisions bearing upon the question in hand, and each case must in the application of general and recognized principles depend very much for its result upon its own peculiar circumstances. The principle that the intent of the testator must control when not inconsistent with the terms of the will is too firmly established to be now questioned, and in the application of that principle the judgment of the court below should be affirmed.

All concur, except RAPALLO, J., absent.

Judgment affirmed.

Upon a subsequent motion to amend remittitur by award-ing costs in this court to all the litigants, payable out of the estate of John McLean, deceased, the following opinion was handed down:

*Per Curiam.* Courts have no right to be liberal to suitors at the expense of the estates of decedents, or trust funds over which they have control. There was a propriety under the circumstances that the costs of all the parties to the litigation in the Supreme Court should be paid out of the common fund. The action was brought by the executor of John McLean, deceased, for a judicial construction of a single clause of his will. Such action was made necessary by the claim of the present appellants that the testator had died intestate, as to one-fourth of his estate, by reason of the failure to make any effectual disposition of that fourth. The

Supreme Court, in the first instance at Special Term, and upon appeal at General Term, held adversely to the appellants, and gave judgment in favor of the will and a valid disposal of the whole estate by it, and the judgment of the General Term was sustained by a very satisfactory opinion of Judge DAVIS. With two adverse judgments against them, there is no reason why the appellants should not be at the risks of any further litigation. It serves greatly to encourage contests of this character to have it understood that they are attended with no pecuniary hazards, but that let the judgment go as it may, all parties will be indemnified, and counsel liberally paid from a common fund. The prevailing party should not, under such circumstances, suffer equally with the unsuccessful prosecutor of appeals and promoters of the litigation.

The appellants might well be charged with the costs in this court; but under the circumstances, if neither party recovers costs against the other, there can be no great injustice. That is the effect of the judgment of this court as remitted to the Supreme Court.

All concur, except FOLGER and MILLER, JJ., absent.

Motion denied.