the set-back, and each house was in fact so sold, but no mention of this restriction was made in the deeds. The court held that the restriction could be enforced in equity; that the original owner was bound in equity to use and dispose of his remaining lots, so that the assurances upon which prior purchasers bought would be fulfilled by all subsequent purchasers. It was held that this equity attached to the remaining lots. The case thus proceeds upon the assumption that there was a valid and binding agreement creating the restriction between the original owner of the various lots and his grantees. But in the case at bar there is no evidence of any binding agreement, parol or under seal, creating the covenant. The cases are not parallel. The fact that defendant had notice of the agreement of 1846 as recorded cannot help the plaintiff. This was not notice of a binding agreement. On the contrary, it was information that the agreement was inoperative by its own terms for lack of proper proof of three of the signatures, and was recorded improperly. From an inspection of this record the defendant surely had a right to assume that there was no binding agreement creating the easement. Bradley v. Walker, 138 N. Y. 291, 299, 33 N. E. 1079.

But, if this conclusion is not warranted, if the covenant sought to be created by the instrument executed in 1846 is still operative, there is a ground upon which the court should refuse the injunction prayed for. It would appear that for the last 60 years this part of Thirty-Seventh street, with few exceptions, has been used exclusively for residential purposes; the houses having a set-back of seven feet. Within recent years this locality has materially changed in character. It is fast becoming a business center, with business buildings of enormous value. The avenues and streets immediately bounding Thirty-Seventh street have entirely lost their residential character, and have become business streets. The most valuable use to which property can be put in that neighborhood and in Thirty-Seventh street itself is a business use with large business buildings. To enforce this covenant so long after its usefulness has disappeared, and to forbid the defendant to make this most valuable use of his property, would be injuring the defendant without conferring any benefit upon the plaintiff. For this reason also the injunction should be refused.

Trustees of Columbia College v. Thacher, 87 N. Y. 311. There should be judgment for the defendant, dismissing plaintiff's complaint with costs.

Judgment for defendant, dismissing the complaint, with costs.

(120 App. Div. 463)

### In re ARENSBERG'S WILL.

(Supreme Court, Appellate Division, Second Department. June 7, 1907.)

1. WILLS—CONSTRUCTION—LAPSED LEGACY.

　　Testator devised his residuary estate to his executors in trust during the minority of one of his sons, to be divided, on the termination of the trust, among persons named, including a son who was afterwards disinherited by a codicil. *Held*, that, where the son during whose minority the trust was to continue became of age before testator died, the

provisions of the will as to the residuary estate did not lapse, so as to require the estate to be divided as if testator died intestate, but became operative at once.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 2167–2170.]

2. SAME—EXCLUSION OF HEIRS.

The unaccounted for exclusion of an heir in a will is not ground for contest, unless marked by fraud, deceit, or unfair influence, so that the act of disinheritance was that of another, and not that of testator.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 203.]

Appeal from Surrogate's Court, Kings County.

In the matter of the probate of the last will and testament and codicil of Lipman Arensberg. From a decree of the Surrogate Court decreeing probate, Milton L. Arensberg appeals. Affirmed.

For prior report, see 102 N. Y. Supp. 971.

By the sixth paragraph of said will the testator gave all the residue of his estate, real and personal, to his executors, to hold in trust during the minority of his son Sydney, or until his death, whichever event shall first occur, to collect and receive such income and profits, and to pay taxes, etc., and from the net income to pay to the testator's daughter May the sum of $2,500 a year, and the surplus net income to apply to the satisfaction of any and all debts, claims, and obligations owing by the testator of any and every nature whatsoever, including bonds, secured by mortgages on the testator's real estate. Upon the termination of said trust the testator directed the executors and trustees to divide said estate so held in trust into as many parts as the testator had children surviving, including any that might have died leaving issue, and to pay to each child so surviving one of such equal shares, and to the issue of any child that may have died leaving issue to pay to such issue the share the parent would have taken if living. The executors and trustees before paying an equal share or division to each of the children, or to the issue of any deceased child, at the termination of the trust were directed to charge against such heir any indebtedness of any child to the testator. The executors and trustees were also directed by the second clause of the will to pay out of said trust or residuary estate all liens and incumbrances upon the premises, 219 Adelphi street, which were devised to the testator's daughter May. By the third clause of the will the executors and trustees were directed to pay out of the trust estate $2,500 to the testator's daughter May in the event of her engagement to be married during the term of the trust, and, if she should not become engaged to be married during the continuance of said trust, the executors and trustees were directed on the termination thereof to pay to her out of said trust estate the sum of $2,500. By the fifth clause of the will the executors and trustees are directed to pay out of the estate held in trust to the testator's son Sydney, upon his arriving at the age of 21 years (i. e., upon the termination of said trust), the sum of $5,000. By the last clause of the will the executors and trustees are given power to sell real estate and invest the proceeds in certain bonds and mortgages, or to apply the same to the payment of mortgages which may be liens on the testator's real estate. In this will the testator included all of his said children. By the codicil the testator expressly disinherited Milton L. Arensberg, and the issue of said Milton L. Arensberg from the share given to him in the sixth paragraph of the will. The codicil makes no other change in the original will.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Andrew F. Murray, for appellant.

Jacob Brenner, for respondents.

JENKS, J.   I think that the main intent of the testator was to divide his estate equally among his children and the issue of any predeceased child per stirpes.  The trusts provided for during the minority of his child Sydney were plainly created because of his minority, and were but incidental to the division, which was only postponed because the second trust required it.  As Sydney attained his majority during the life of the testator, the provisions for the trusts became inoperative, and the main disposition by the residuary clause became at once operative; for that disposition could not fail unless it was so related to the trust that the failure of the latter necessarily involved its failure as well.   McLean v. Freeman, 70 N. Y. 81;  Wager v. Wager, 96 N. Y. 164, 171;  Hughes v. Mackin, 16 App. Div. 291, 44 N. Y. Supp. 710.   I think that it is clear that the estate necessary to the existence of the trust must be regarded as but a preceding limitation and not as a preceding condition.   Williams v. Jones, 166 N. Y. 522, 60 N. E. 240, and authorities cited.   The expression of the residuary clause is sufficient to convey the estate.   Roosa v. Harrington, 171 N. Y. 341–350, 64 N. E. 1;  Matter of Brown, 154 N. Y. 313, 48 N. E. 537.   The words "upon the termination of the trust" can have no meaning or effect attributed to them, as the trust had no existence. Weeks v. Cornwell, 104 N. Y. 325–340, 10 N. E. 431.   The discretionary power of sale in the executors did not vest them with the legal title, and it is not inconsistent with the passing of the estate under the residuary clause.   Real Property Law, Laws 1896, c. 547, p. 571, § 77;  Fowler's Real Property Law, p. 389, and cases cited;  Hughes v. Mackin, supra.

So far as the disinheritance of the contestant is concerned, provided that act was plainly accomplished by a valid will, we cannot interfere with it.   Matter of Mondorf, 110 N. Y. 450, 18 N. E. 256. The testator in his codicil excluded one child by name upon the express ground that he had been undutiful.   That exclusion, even if unaccounted for, would present no ground for a contest unless marked by fraud, deceit, or unfair influence, so that the act of disinheritance was really that of another, and not the testator.   Ross v. Gleason, 115 N. Y. 664, 22 N. E. 348.

The decree is affirmed, with costs.   All concur.