In the Matter of the Judicial Construction of the Last Will and Testament of FRANCES KNAPP, Deceased.

MARY JACKSON and Others, Appellants; LILLIAN B. BRUCE, Respondent.

Third Department, June 19, 1923.

**Wills — construction — devise in trust for benefit of grandson until he reached age of thirty years and then to pay him principal — in case grandson died before reaching thirty years of age property was devised " to his heirs at law " — grandson died before testatrix at age of thirty-one and without issue — devise to grandson did not lapse on his death — property passed to his heirs at law — property being personal, entire amount goes to grandson's mother under Decedent Estate Law, § 98, subd. 6.**

A devise by a testatrix of all her property in trust for the benefit of her grandson until he arrived at the age of thirty years, which provided that when he reached the age of thirty years the principal should be paid to him, and that in the event he should not live to be thirty years of age all of the property

should go " to his heirs at law," did not lapse on the death of the grandson without issue before the death of the testatrix and after he reached the age of thirty years.

The word " heirs " as used in the will must be construed to have been used in its primary or legal sense and not restricted to the heirs of the body of the grandson, and, therefore, the property devised passed to the heirs at law of the grandson, and since it consists entirely of personalty it passed to the grandson's mother, his sole next of kin, under subdivision 6 of section 98 of the Decedent Estate Law, as amended by chapter 126 of the Laws of 1921.

APPEAL by Mary Jackson and others from a decree of the Surrogate's Court of the county of Delaware, entered in the office of said Surrogate's Court on the 6th day of January, 1923, judicially construing the will of Frances Knapp, deceased.

*George Wohlleben,* for the appellants.

*Raymond Ballantine,* for the respondent.

Decree unanimously affirmed upon the opinion of McNAUGHT, Surrogate, with costs to both parties payable out of the estate.

The following is the opinion of the surrogate:

McNAUGHT, S.:

Proceeding under section 145 of Surrogate's Court Act upon application for probate for a judicial determination as to the validity, construction and effect of the disposition of property contained in the 2d paragraph of the will of Frances Knapp, deceased.

By consent the issues raised were reserved for future determination and the will admitted to probate.

The testatrix, Frances Knapp, died a resident of the town of Franklin in the county of Delaware, March 29, 1922, in her ninety-second year. The will in question was executed by the testatrix on the 12th day of August, 1912, when she was in her eighty-second year. At the time of the execution of the will the sole descendant, heir at law and next of kin of the testatrix was one John Duncan Knapp, her grandson, then about twenty-three years of age and unmarried. He died July 6, 1920, aged thirty-one years, unmarried, and left surviving him his mother, the respondent Lillian B. Bruce, two half-sisters and one half-brother.

At the time of her death the testatrix left surviving her as heirs at law and next of kin twelve nephews and nieces and two grandnieces.

The petitioners have put in issue and seek a judicial construction of the 2d paragraph of the will of testatrix, which disposes of all of her property and reads as follows:

" *Second.* I hereby give devise and bequeath All of my Estate of whatever name or nature and wherever situated to my Executor hereinafter named in Trust nevertheless: for the following uses and purposes: To invest and re-invest the same and to collect the income, rents and profits thereof and ·to pay the same annually to my Grandson John Duncan Knapp, of the City of New York, until he arrives at the age of Thirty years, and when he shall attain the age of Thirty years I hereby direct my said Executor to pay to him All of the principal sum of my said Estate, together with any unused or accrued income or interest therefrom. In the event my said Grandson shall not live to attain the age of Thirty years I give, devise and bequeath all of my estate of every name and nature to his heirs at law."

The petitioners contend, *first*, that the legacy to John Duncan Knapp under the 2d paragraph of the will lapsed by reason of the death of the beneficiary prior to the death of the testatrix, and, therefore, testatrix died intestate; *second*, that the words " heirs at law " as used in the 2d paragraph of the will were used by the testatrix in the sense of issue or descendant, and that John Duncan Knapp having died without issue, it must be held testatrix died intestate.

The respondent contends that under the provision in issue it is manifest the testatrix did not intend to die intestate as to any of her property and that by virtue of the provisions of the will, when her son, the grandson of testatrix, died, she, as his heir at law, took under the will the property John Duncan Knapp would have received had he lived.

It is manifest the testatrix had a clear and well-defined purpose in mind when the will in question was executed. She was in her eighty-second year, her grandson her sole descendant. Evidently she contemplated the probability that her grandson would survive her. She desired, as is evident from the language employed, that he should receive the benefit of her entire estate. She, therefore, provided in clear terms that her executor should receive her entire estate in trust to invest and keep invested, paying the income to and for the benefit of her grandson, and when the grandson reached the age of thirty years, which she apparently believed to be an age of discretion and judgment, the entire corpus of the estate to be paid over to him. Contemplating the possibility her grandson might not arrive at the age of thirty years, and might not receive the corpus of the estate, she added the language which causes the present controversy and which reads as follows: " In the event my said Grandson shall not live to attain the age of Thirty years, I give, devise and bequeath all of my estate of every name and

nature to his heirs at law." Owing to the death of the grandson prior to the death of the testatrix, the trust for his benefit failed.

The first question to be determined is whether by reason of his prior death, the whole provision lapsed or passed as an ulterior devise. An ulterior devise, to take effect upon the defeasance of a former one, will attach as well when the failure to the primary devise is by the happening of some event such as the death of the devisee during the lifetime of the testator as by an event occurring after his death, by which the first devise after it has taken effect is defeated, unless the ulterior devise is so connected with and dependent upon the primary one that it cannot, consistently with the provisions of the will, have effect if the latter fails *ab initio.* (*Wager* v. *Wager,* 96 N. Y. 164; *McLean* v. *Freeman,* 70 id. 81; *Downing* v. *Marshall,* 23 id. 366; *Vanderzee* v. *Slingerland,* 103 id. 47; *Crozier* v. *Bray,* 120 id. 366; *Matter of Miller,* 161 id. 71; *Matter of Arensberg,* 120 App. Div. 463.)

Within the rules laid down by the authorities cited, it must be held that the fact that John Duncan Knapp lived beyond the age of thirty years and then predeceased the testatrix, did not render void the provision in the will, and that the devise and bequest passed to his heirs at law even though he died after attaining the age of thirty years, prior to the death of the testatrix, and the estate either in trust or otherwise never vested in him.

The second and the most difficult question involved in determining the issues in this proceeding is to determine whether under the language employed the testatrix restricted the succession to the heirs of the body or issue of John Duncan Knapp, or whether the words were employed in their legal sense.

" The question is, what was the intention of the testatrix? That is to be ascertained from the language which she used. As was said by Judge O'BRIEN in *Johnson* v. *Brasington* (156 N. Y. 181, 185): ' When we speak in such cases of the intention of the testator we do not always refer to some intention or purpose that he actually had in mind. We mean that when he has expressed himself in ambiguous or doubtful language that the law will impute to his words such a meaning as, under all the circumstances, will conform to his probable intention and be most agreeable to reason and justice.' " (*Riker* v. *Gwynne,* 201 N. Y. 143, 149.)

" The question of intent may relate to the mode of administration and the character of the gift, as well as to the amount or the person to whom it is made. The duty of the court is not to make a new will or codicil to carry out some supposed but undisclosed purpose, but to ascertain what the testator actually intended by the language employed by him when properly interpreted, and then to determine

whether such intended provisions are valid or otherwise. The duty of the court is to interpret, not to construct; to construe the will and codicil, not to make new ones." (*Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86, 92; *Tilden* v. *Green*, 130 id. 29.)

The word " heirs " when used in a will or other instrument is to be understood in its primary or legal sense, unless it appears from other parts of the instrument that it was used in the more restricted sense of children, heirs of the body or lineal descendants. (*Johnson* v. *Brasington*, 156 N. Y. 181; *Wallace* v. *Diehl*, 202 id. 156; *Stack* v. *Leberman*, 169 App. Div. 92.)

The authorities relied upon by the petitioners all seem to be cases in which it was apparent that the words were used in a limited sense. In *Snider* v. *Snider* (160 N. Y. 151) the will bequeathed to a son the sum of $2,500 " to be held, used and enjoyed by him, my said son, during his life, and at his death to his heir or heirs, should he have any. Should he die without issue, I give and bequeath said sum of two thousand five hundred dollars to my son Abraham." Manifestly the testator used the words in the restricted sense.

In the case of *Bundy* v. *Bundy* (38 N. Y. 410) the court held that it clearly appeared the words were used by the testator in their restricted sense as including lineal heirs only.

In *Taggart* v. *Murray* (53 N. Y. 233) the provision in question was for the benefit of a daughter which read: " All my remaining property * * * I give, devise and bequeath to my daughter Cornelia, for her support and comfort, to be held and controlled by her, and at her death to pass to her heirs, and if she leaves no heirs, to be disposed of by her will to whom and for what purpose she may deem right and proper." The court in determining the proper construction of the language in question says: " In construing the word *heirs* as meaning *issue*, we are guided by what seems to us the manifest intention of the testator."

The case of *Thurber* v. *Chambers* (66 N. Y. 42) simply reiterates the doctrine that the word " heirs " will be construed to mean " children " when from the whole will such appears to have been the intention of the testator.

The language of Judge O'Brien in *Johnson* v. *Brasington* (*supra*) is quite applicable to the case at bar, although in that particular matter the language was clearer than in the present case. In the course of the opinion (at p. 185) Judge O'Brien, speaking for an unanimous court, says: " It is useless to speculate with reference to the thought that was in the testator's mind when he made the will. The instrument contains nothing to show whether he supposed that Stephen would leave children surviving him, or die childless

as he actually did.   *   *   *   Moreover, it is quite clear from the language used that the testator intended to dispose of his land in fee, and not to die intestate with respect to any part of his property. The defendants' construction imputes to him a contrary intention, and this I think is the fatal weakness of the argument in support of their contention.   That the testator, when carving out a life estate to his widow, and another life estate to his son, intended to leave the remainder undisposed of in the event of the son's death without children, is altogether improbable.   *   *   *

" The defendants invoke a recognized rule of construction to give to them the more restricted meaning, and that is that the testator could not have intended by the will that, in the event of the death of his son without children, the land should pass to the relatives of his first wife to the exclusion of the relatives of his own blood.   There is nothing in the case or in the language of the will to show that this consideration had any influence on the mind of the testator, and the strong presumption against intestacy and the words of the will outweigh all arguments based upon this rule."

It is the opinion of the court that the words " heirs at law " as used in the 2d paragraph of the will of Frances Knapp must be given their primary and legal significance, were not restricted to issue, but were used to designate that class of persons who would be entitled to inherit from John Duncan Knapp according to the laws relating to the devolution of property of decedents in the State of New York.

There are many considerations which would obviously tend to make the court reluctant to cause the property of the testatrix by construction to pass to those not related to her by consanguinity. The court is, however, unable to reach any other conclusion under the authorities as it construes them, than to hold that the devise to John Duncan Knapp did not lapse by reason of his death after attaining the age of thirty years, and that such devise and bequest was an ulterior one passing under the language of the will of testatrix to his heirs at law in their primary and legal sense.   The court, therefore, holds that the respondent Lillian B. Bruce takes, under the will of the testatrix, the property which would have passed to John Duncan Knapp, the property consisting entirely of personalty and she being entitled to the whole thereof under the provisions of subdivision 6 of section 98 of the Decedent Estate Law, as amended by chapter 126 of the Laws of 1921, in effect September 1, 1921.