Isidore Hopfan, Plaintiff, *v.* Oswald W. Knauth and Others, Constituting the Emergency Relief Bureau of the City of New York, and Another, Defendants.

Municipal Court of New York, Borough of Manhattan, First District, September 13, 1935.

*Nicholas H. Pinto* for the plaintiff.

*Lewis Ginsburg* for the defendant.

EDER, J.    The city of New York, through one of its administrative agencies, *i. e.*, the emergency relief bureau of the city of New York, distributed what is termed " relief vouchers " to various indigent persons to enable them to purchase food, and these food vouchers, in varying sums, were left with the family found to be in indigent circumstances.    The recipient was required to go to certain designated establishments, primarily grocery stores, previously authorized by the city to accept these vouchers, and which were required to give to the recipient merchandise in the amount of each voucher.    Such designated food purveyor was, in turn, required to transmit it to the emergency relief bureau and if found to be attended with regularity, or, as it is styled, " if found in order," such merchant, in time, would receive a check for the aggregate amount of the voucher previously sent to the relief bureau.    Merchants, in general, were not authorized or permitted to accept these food relief vouchers, but only those specifically designated by the city.    Each of these vouchers contained two conditions thereon, viz., (1) it was valid for only five days from the date of its issuance; (2) it was neither negotiable nor assignable.

Designated merchants who had honored these vouchers found themselves financially circumscribed due to the lapse of time from presentation to payment of these vouchers, and, as a consequence, there sprang into being a practice of transferring them (like bills and accounts receivable) to other merchants for cash at a discount, or for merchandise.

One William Pettinger, an officially designated food purveyor, had transacted such matters with the plaintiff for a long period of

time, and plaintiff, in turn, ultimately turned over to the city these vouchers received from Pettinger, and they were later honored by the city. The city, though fully cognizant of this situation, at no time refused to pay these vouchers and always did so, except as respects the sum represented by the vouchers in suit. Its declination to do so in the instant case was occasioned by the claim of the defendant Dorman (hereafter called defendant) that he was entitled thereto by virtue of a deed of trust whereby a corporation known as Park Lane Groceries, Inc., and Pettinger assigned to him for the benefit of creditors, and included therein, he contends, is the title to these vouchers and the money represented thereby and due thereon. He further contends that the transfer of the vouchers to plaintiff was in fraud of the creditors, and further, that they could not validly have been transferred because of the provision in the vouchers against negotiability or assignment thereof. The vouchers cover the period from February 2, 1934, to March 29, 1934.

The assignment or deed of trust to the defendant was made on or about April 13, 1934. The deed of trust or assignment was not recorded. The city, by a letter to plaintiff, dated August 28, 1934, apprised him that these vouchers so received by him from Pettinger are in order for payment. The city has admitted its liability, but in view of the conflicting claims impleaded the defendant and deposited the sum in controversy in court. The controversy thus is now solely between the plaintiff and the impleaded defendant.

Plaintiff now moves for summary judgment under rule 113 of the Rules of Civil Practice, claiming no triable issue is presented by defendant's answer and counterclaim and that plaintiff is entitled to judgment as a matter of law. I am of the opinion that plaintiff's motion is well grounded and should be sustained.

The complaint alleges the essential facts mentioned. The only denial in the answer of any force as a pleading is the denial that the plaintiff received the vouchers from Pettinger for a good and valuable consideration; the other denials are of an inconsequential nature; the allegations of the complaint are otherwise admitted. As a separate defense and counterclaim it is alleged that the merchandise for which Pettinger received the vouchers was the property of Park Lane Groceries, Inc., and that Pettinger received it as agent thereof, he being the president of the corporation; that the vouchers were not negotiable or assignable; that Pettinger had no right to transfer them to plaintiff, as plaintiff well knew; that Pettinger was insolvent at the time of transfer and did not apply the moneys received by him from plaintiff to the benefit of the creditors; that Pettinger and the said corporation executed to defendant an assignment of all their property, as trustee for the

benefit of creditors, and he thereby became the owner of and entitled to these vouchers and the moneys represented by them and he counterclaims for this same sum.

It is incumbent upon the defendant to set forth *evidentiary facts*, including copies of all *documents* as shall fully disclose defendant's contentions and show that his denials or defenses are sufficient to defeat plaintiff. Defendant has wholly failed to meet this requirement. His opposing affidavit is merely a compendium of naked assertions, unsupported by evidentiary facts, and unaccompanied by *documentary* proof. He alleges, for example, that Pettinger, prior to the sale and transfer of these vouchers to plaintiff, transferred his business to Park Lane Groceries, Inc., no date being given, no documentary proof being submitted, and that during the period covered by these vouchers it was the owner of the business and that these vouchers were received for merchandise obtained there. It is then alleged these vouchers are non-negotiable and non-assignable. Hence it is claimed there was never a valid transfer of these vouchers by Pettinger to plaintiff. It is also alleged that *at the time of the transfer of these vouchers to plaintiff*, Pettinger was insolvent and that plaintiff was so informed by Pettinger. This does not harmonize with the dates of the vouchers and is contradicted by them, for they all antedate the date of the assignment or deed of trust, which was made on or about *April 13, 1934.* Moreover, there is no documentary proof of the date, nature or limitation, if any, of the assignment or deed of trust, or of the recordation thereof. This being a written instrument, presumably, as well as the transfer by Pettinger to the corporation, was capable of submission to the court. No explanation has been vouchsafed for the non-production of the documents mentioned. Nor is there any proof submitted by the defendant to substantiate the claim of fraud, or alleged conversion by Pettinger, or the claim that plaintiff knew of Pettinger's insolvency, or that plaintiff did not part with a good, fair and valuable consideration for the transfer. Just the bald claim, but no *evidentiary* facts. It is pure conjecture and hearsay. On the other hand, there is the positive and unequivocal denial by plaintiff that he ever was told or knew of any contemplated assignment by Pettinger, or of his insolvency, supported and corroborated by the affidavit of Pettinger, as well as his positive allegation that he did part with a fair and valuable consideration for the transfer. Defendant has wholly failed to meet the requirements of rule 113.

It is positively alleged by plaintiff and not denied by the defendant, that he, defendant, knew for a long period of time of these vouchers held by the city, to which he now claims title, and never

previous to the time he was impleaded, made claim thereto or took any steps or any action to enforce payment to him. It is a significant allegation and remains unchallenged. It is also alleged by plaintiff and not denied by the defendant, that he, as trustee, collected whatever assets Pettinger had at the time of the execution of the deed of trust and thereafter distributed the dividends arising therefrom to Pettinger's creditors and that at no time did he ever advise such creditors that there was a further asset constituting the claim now being made.

That Pettinger or the Park Lane Groceries, Inc., was insolvent in April, 1934, raises no presumption that such condition existed in the preceding February or March. Insolvency will not be presumed, but must be established by proof. (*Kain* v. *Larkin*, 131 N. Y. 300.) Nor does inability to pay current obligations as they mature establish insolvency. (*McCarty* v. *Nostrand Lumber Co., Inc.*, 232 App. Div. 63.) Indeed, no proof has been adduced by the defendant that Pettinger was in fact insolvent when the vouchers were assigned to plaintiff. And it is elementary that fraud is never presumed but must be proved. No proof has been attempted.

As to the claim that the transfer by Pettinger of the vouchers was invalid because of the condition thereon that they were non-negotiable and non-assignable, and that as such trustee under the deed of trust defendant became possessed of title thereto, it is without force for several reasons. This deed of trust, so styled, had for its purpose the marshaling of all the assets and their ultimate reduction to cash and the distribution of the resulting dividends among the creditors; its legal status and effect are, therefore, to constitute such transaction a general assignment for the benefit of creditors, and the so-called common-law trustee is such an assignee, arbitrary nomenclature to the contrary notwithstanding. (*Matter of Polansky*, 41 F. [2d] 547; 15 A. B. R. [N. S.] 474; *Matter of Cayne Construction Co.*, 58 F. [2d] 664.) Defendant was such a general assignee for the benefit of creditors and nothing more. As such he possesses no greater rights than those of his assignor. (*Paddell* v. *Janes*, 84 Misc. 212.) Pettinger, had he interposed such a claim of non-negotiability and non-assignability would have failed in it because such a defense is one available to the city alone. (*Fortunato* v. *Patten*, 147 N. Y. 277.)

In the *Fortunato* case the contract was between the city and one Dawson. It also contained a provision against assignment; neither the contract, nor any moneys payable thereunder, could be assigned without the consent of the city. None the less Dawson assigned to one Patten a certain sum thereunder without the consent of the city. Dawson made another assignment to the Twelfth Ward

Bank with the consent of the city. The bank claimed the assignment to Patten was invalid because of the provision against assignment and because the city did not give its consent thereto and claimed title to the fund. The city, as here, interpleaded the bank as an adverse claimant and deposited the money due under the contract in court. In overruling the contention the court said (p. 281): " The provision of the contract adverted to has been treated by the court below as rendering void all assignments of moneys to grow due unless the consent of the city was obtained, and as available by any assignee to defeat the rights of a senior assignee who had failed to secure the necessary consent.

"We do not think that this provision is capable of any such construction; it was inserted in the contract solely for the benefit of the city, and prevents any claim being asserted against it in the absence of consent; it is a shield to protect the city, and not a weapon with which a junior assignee is to fight his way to a more favorable position in line of payment."

Like usury, such a defense is personal and may not be availed of or asserted by a third party not a privy or stranger to the contract. (*Bullard* v. *Raynor*, 30 N. Y. 197; *Auto Mortgage Co.* v. *Montigny*, 168 N. Y. Supp. 670.) The city has not interposed this defense; has interposed none at all; it rests content to leave the fund deposited in court to the one the court finds entitled to it. The defendant clearly has no standing to attack the validity of the transfer or assignment by Pettinger to the plaintiff on this ground.

Again, plaintiff, in good faith, acquired title to the vouchers prior to the execution of the deed of trust or assignment to defendant. Creditors or purchasers have rights superior to the assignment, where prior to the assignment they have received money or property by means of absolute transfers or conveyances in good faith. (5 C. J. 1292, § 492; *Shotwell* v. *Dixon*, 163 N. Y. 43, affg. 22 App. Div. 258.)

Defendant also urges the assignment to plaintiff is void under article 10 of the Debtor and Creditor Law. This provision has no application here. As its title explains, it relates to and deals with " Fraudulent Conveyances," not with *bona fide* transactions. And section 273 thereof expressly excludes from its operation and effect transfers and conveyances founded on a fair consideration. The Debtor and Creditor Law is merely a State Bankruptcy Act and is patterned after the National Bankruptcy Act. Even under the National Bankruptcy Act, as Professor Joseph G. M. Browne points out in his excellent disquisition on " Bankruptcy Law and Procedure," chapter XLVI, page 114, section 203, entitled " Good faith; exception in cases of; illustrations: Conveyances, transfers, liens

and preferences acquired in *good faith*, are recognized and respected by the Act and remain unimpaired by the bankruptcy of the debtor."

Plaintiff makes the claim that, aside from any other considerations, defendant has no standing to interpose an answer because (a) having wound up the trust estate by the distribution of dividends to the creditors, his status as trustee or assignee is at an end; (b) that having failed to record the deed of trust or assignment, it is void. The first ground has merit as the general rule is that when the purposes for which a trust is created ceases, the estate of the trustee also ceases; in other words, a power in trust ceases with the termination of the purpose for which it was given. (*Matter of Overton*, 89 Misc. 59; *McLean* v. *Freeman*, 70 N. Y. 81; *Kahn* v. *Tierney*, 135 App. Div. 897; affd., 201 N. Y. 516.) The second contention lacks support in precedent. Failure to record a deed of trust or assignment does not affect or impair the validity of the instrument. (*Franey* v. *Smith*, 125 N. Y. 44; *Wasserman* v. *Raynor's Fur Corp.*, 137 Misc. 872.)

Both on the facts and law I find no triable issue raised. The motion for summary judgment is granted, with ten dollars costs. Judgment is awarded for plaintiff and against defendant for $709.50. The counterclaim is dismissed on the merits and as a matter of law.