[Civ. No. 29942.   Second Dist., Div. One.   Nov. 18, 1966.]

FREDERICK W. LYON, Plaintiff and Appellant, v. LEWIS E. LYON et al., Defendants and Respondents.

Frederick W. Lyon, in pro. per.; and William N. Neblett for Plaintiff and Appellant.

Macdonald & Halsted, Alexander Macdonald and Richard D. Wells for Defendants and Respondents.

LILLIE, J.—A money judgment for plaintiff (on his complaint for an accounting and dissolution of a partnership at will) also permanently enjoined him (under defendants' cross-complaint) from using the firm name of "Lyon & Lyon" in the practice of law and representing that he is now a partner thereof or in any way connected therewith. He appeals from that portion of the judgment based upon the trial court's finding that there is no "goodwill" of the partnership, and ordering a permanent injunction.

In 1921 Frederick S. Lyon and [defendant] Leonard S. Lyon, Sr. (deceased prior to trial) formed a partnership for the practice of law under the firm name of Lyon & Lyon specializing in patent, trademark and copyright law. Later others joined the firm and after various reorganizations plaintiff Frederick W. Lyon became a partner in 1946. On January 1, 1955, a new partnership was formed and a new partnership agreement was executed by all partners including plaintiff and each of the nine named defendants (Exh. 1). (Leonard S. Lyon, Sr., was an active partner in the firm from January 1, 1955, until January 8, 1962; however, effective January 1, 1961, Exhibit 1 was orally modified to provide that he receive $5,000 per month until his retirement or death in lieu of a percentage interest in the profits of the partnership.)

On January 4, 1962, without the knowledge or consent of any of his partners and in breach of the partnership agreement (Exh. 1) and the fiduciary duties owed by him to his partners, plaintiff drew a counter check in the amount of $10,000 on the partnership checking account payable to himself, and attempted to deposit the proceeds in his personal account. Upon being advised of this by the bank on January 5, 1962, defendants instructed the bank to, and it did, stop payment. On January 8, 1962, defendants dissolved the partnership and formed a new one retaining the firm name of Lyon & Lyon effective January 8, 1962; it excluded plaintiff. Immediately thereafter, on January 8, 1962, plaintiff was given notice of the partnership dissolution.

In compliance with the provisions of Paragraph X of the partnership agreement (Exh. 1) controlling the rights of the parties upon dissolution, and under subparagraph (a), defendants caused to be prepared a full and accurate inventory and appraisal of the physical assets of the partnership; the parties stipulated to their money value as of January 8, 1962, and that plaintiff was entitled to 1/10th of said amount as his share. Further, defendants closed the books of the firm

and caused all time slips and charges to clients to be prepared and billings for all accrued professional services rendered to be determined as of January 8, 1962; It was stipulated that plaintiff was entitled to 1/10th of the value of the accounts receivable actually collected. Other sums were determined and ordered paid to plaintiff. In compliance with Paragraph X(b) defendants delivered to plaintiff all of the books, papers, files and other documents belonging to, or in any manner connected with, the business of all clients represented by the firm in all instances where such clients directed and plaintiff requested that such books, papers, files and other documents be delivered to him; since January 8, 1962, plaintiff has represented and has continued to represent each such client.

Since January 8, 1962, plaintiff has undertaken to practice law as a sole practitioner using the firm name of "Lyon & Lyon," thereby holding himself out to the United States Patent Office, the courts, and the general public as a member of a partnership practicing law under the name of "Lyon & Lyon"; plaintiff has no partner; by his conduct he has represented that he is practicing law in association with defendants. Thus, the trial court found that by reason of plaintiff's use of the fictitious name of "Lyon & Lyon" the public, the courts and the Patent Office are likely to believe that he is associated with or a partner in the firm of Lyon & Lyon in which defendants are partners, and are likely to be, and in some instances have been, deceived and misled by such use.

Relying upon Paragraph II of the partnership agreement (Exh. 1) providing that the partners shall be the joint owners of various assets including "good will . . . heretofore acquired by the partnership," section 14100, Business and Professions Code, and *Smith* v. *Bull*, 50 Cal.2d 294 [325 P.2d 463], appellant argues that the trial court erred in refusing to place any value on the goodwill connected with the partnership. As "goodwill" he claims an interest in the proceeds of all business on hand at the time of dissolution, as reflected in the then current files of Lyon & Lyon, and a share of the expectation of future business of that partnership.

The trial judge based his conclusion that "A partnership of attorneys at law has no good will to be distributed as a firm asset on its dissolution" (¶ 8) on certain findings—that the firm name of Lyon & Lyon identifies the individuals constituting the partners operating thereunder and any partnership goodwill represents an aggregate of the reputation, skill, learning and experience of such individual members and is

incapable of being assigned a monetary value, that insofar as any such goodwill consists of the expectation of future business, it is so personal to such individual members that it cannot be dealt with as property, that the books, papers, files and other documents of such clients as were delivered to plaintiff and his continued representation thereof subsequent to January 8, 1962, constitute the entire share of any goodwill of the firm of Lyon & Lyon to which he is entitled, and that for purposes of the accounting herein, the goodwill of the firm did not have any monetary value; and *Little* v. *Caldwell*, 101 Cal. 553 [26 P. 107, 40 Am.St.Rep. 89], and Paragraph X (partnership agreement).

The trial court's findings are amply supported by the evidence. The firm of Lyon & Lyon consisted of 10 practicing lawyers all specializing in patent, trademark and copyright law. The accounting procedures and division of work of the partnership reflect an apportionment of fees for legal services on the basis of work done. The firm rendered no contingent services; all fees for professional services were billed to clients at the end of each month as a result of which there was no business on hand at the beginning of any month for which all work done to date had not been billed. Immediately upon dissolution of the partnership, and in accord with the provisions of the partnership agreement, defendants closed the books and prepared all time slips and charges to clients and billings for all accrued professional services rendered as of January 8, 1962. (*Freese* v. *Smith*, 114 Cal.App.2d 283 [250 P.2d 261], relied on by appellant is here inapplicable; therein the books were not closed upon dissolution.) All billings after that date represented the work done by the new firm of Lyon & Lyon. In addition to preparing an inventory and appraisal of the physical assets of the partnership, defendants delivered to plaintiff the books, files, papers and other documents relating to the business of all clients represented by the firm in all instances where such clients so directed, and plaintiff requested; since January 8, 1962, he has retained and continued to represent all such clients. Plaintiff conceded in his testimony that his practice after January 8, 1962, was identical with that which he had prior to said date, he has retained all such clients and has been competing in the practice of law with defendants. Thus the issue of "unfinished business" is not here involved, the fees, work and current files having been apportioned under the partnership agreement. The manner in which the law practice of Lyon & Lyon was carried on by the

partners reflects the highly personal and confidential nature of the relationship of each individual partner and the client—for whom he did legal business and to whom the client looked for legal services and responsibility. The great majority of clients who came to Lyon & Lyon came to the individual partner; the individual partner took care of the work and was responsible for it and maintained the account. In answer to the court's question concerning his opinion of the value of the goodwill of Lyon & Lyon on January 8, 1962, defendant Leonard S. Lyon, Jr., testified that the value was "nothing"; "that the good will in the sense that it can be subject to a valuation does not exist and by the nature of a law partnership cannot exist, because such good will as attaches to a legal partnership, attaches to the individuals as such, and if you apply the good will to the partnership itself, what you are doing is applying an aggregate of good wills."

The nature of a professional partnership for the practice of law, the reputation of which depends on the skill, training and experience of each individual member, and the personal and confidential relationship existing between each such member and the client, places such a partnership in a class apart from other business and professional partnerships. The legal profession stands in a peculiar relation to the public and the relationship existing between the members of the profession and those who seek its services cannot be likened to the relationship of a merchant to his customer. (*Barton* v. *State Bar,* 209 Cal. 677, 682 [289 P. 818].) Thus, our research has brought to light no case in this jurisdiction in which an allowance was made to a partner for goodwill upon the dissolution of a partnership created for the practice of law. In the early case of *Little* v. *Caldwell* (1894) 101 Cal. 553 [26 P. 107, 40 Am.St.Rep. 89] (an action for an accounting), the widow's recovery was limited to her deceased husband's share of the value of services rendered in his law partnership with defendant prior to his death; of "good will," the Supreme Court said: ". . . it is certainly true when a professional partnership between attorneys at law is dissolved by the death of one, the survivor is entitled to his own future earnings, and is not required to make an allowance in the settlement of the partnership accounts for what may be termed goodwill of the partnership, or for the profits of such future business as may have been given to him by former clients of the firm, . . ." (P, 561.) Later in *Heywood* v. *Sooy* (1941) 45 Cal.App.2d 423 [114 P.2d 361], the court referring to *Little* v. *Caldwell,*

*supra,* stated: "It will be further noted that the cited case [*Little*] repudiates the notion that a partner is accountable after dissolution for any allowance for what may be termed the 'good will' of the partnership which may result in contracts of employment after dissolution." (P. 426.) In accord is the language of the court in *Cook* v. *Lauten* (Ill.) 1 Ill.App.2d 255 [117 N.E.2d 414] : "The work of Certified Public Accountants requires skill, learning, and experience. It is professional in its character, and in the instant case the parties themselves so regard their calling. The general rule is that a professional partnership, the reputation of which depends on the individual skill of the members, such as partnerships of attorneys or physicians, has no good will to be distributed as a firm asset on its dissolution. 40 Am.Jur., § 27, p. 316. See 44 A.L.R., p. 524." (117 N.E.2d at 416.)

The factual situation in *Smith* v. *Bull,* 50 Cal.2d 294 [325 P.2d 463], is not similar to the one at bar. It involved an advertising agency business; the partnership of Smith & Bull, consisting solely of plaintiff and defendant, employed 22 persons, one of whom was Roach. It had but one contract, i.e., Seaboard Finance Company, which had been brought in and controlled by Smith; Smith became ill during which Bull and Roach gradually took over the Seaboard account. Then Bull leased new premises and certified that he was conducting an advertising agency business under another name; on the same day he was notified by Seaboard that its account would be transferred to him. Bull took all of the firm accounts, books and employees except one, leaving Smith with no accounts and no business. Smith's estate recovered from defendant for appropriating the goodwill of the advertising agency partnership whose only client was Seaboard. Of the existing business (Seaboard) at the time of dissolution, the court said that defendant's "receipt of the Seaboard account was not a contract *subsequently* made with a former client after dissolution of the partnership," as in *Little* v. *Caldwell,* 101 Cal. 553 [26 P. 107, 40 Am.St.Rep. 89] ; it continued: "The goodwill with which we are here concerned does not involve the profits made from Seaboard employment subsequent to dissolution and does not concern profits made from that employment subsequent to dissolution or so far as goodwill is concerned any unfinished business of Smith and Bull. We are concerned with the goodwill of what has been a going concern whose major client was Seaboard and the fact that had the Smith and Bull agency been sold to a third person that goodwill,

because of the Seaboard account, would have been considered a valuable asset of the partnership." (50 Cal.2d at p. 304.) Thus, *Smith* v. *Bull* does not stand for the principle that Smith's estate was entitled to anything in the nature of good will for profits made from the Seaboard account subsequent to dissolution, but as it relates hereto it might well control the distribution of the firm assets upon dissolution. However, in the cause in suit the method of distribution of the firm assets upon dissolution was provided by agreement of the parties (Exh. 1, Par. X(a),(b)).[1]  ▮  Subparagraph (b), Paragraph X, sets up a procedure by which a division of partnership accounts *subsequent* to January 8, 1962, were apportioned; in effect it provides that upon dissolution each partner take "in specie" (subpar. (a))—legal business—so much of the "good will" as may have been created by him during his association with the firm. The evidence shows that this is exactly what plaintiff received. He accepted from defendants all books, papers, files and other documents of all clients who directed such files to be delivered to him; and, subsequent to January 8, 1962, has retained said clients and has continued to represent them.  ▮  In any event, the "good will"—what the advertising agency business could be sold for to a third person—discussed in *Smith* v. *Bull,* 50 Cal.2d 294 [325 P.2d 463], simply does not here exist. The "good will" which plaintiff claims — the expectation of future business — is personal and confidential and attaches to the individual partners of the firm, thus, no monetary value can be attributed to it and there is nothing to sell. This is well illustrated by the example given by defendant Leonard S. Lyon, Jr., in his testimony and by the trial judge at the conclusion of the trial. In this connection our attention has been directed to a portion of Opinion No. 633, rendered October 6, 1943, and published in

---

[1] "(a) Upon the dissolution or termination of this partnership by reason of any cause other than as provided in Paragraph VIII hereof, a full and accurate inventory shall be prepared as soon as is reasonably practicable, and the assets, liabilities, and income, both gross and net, shall be ascertained; the debts of the partnership shall be first discharged and all of the assets of the partnership then remaining shall be divided in specie between or among the partners in equal shares; . . .

"(b) In the distribution of the assets of the partnership, all books, papers, files, or other documents belonging to any client represented by the firm, or connected in any manner with such client's business, shall be delivered to the party hereto who shall have been the procuring cause of the partnership acting as attorney for such client, unless such client shall, in writing, or otherwise, direct; in the event of any such direction by any such client, such direction shall be forthwith complied with by the parties hereto."

"Opinions of the Committees on Professional Ethics of the Association of the Bar of the City of New York 394 (1956): "The practice of law is not a commercial business and there is no good will which one lawyer can sell to another. It is professionally improper for lawyers to attempt to buy or sell the relationship which a lawyer has established with his clients."

Respondents' argument that plaintiff, having wrongfully caused dissolution, is not entitled to an accounting based on the value of goodwill, if any exists (§ 15038, subd. (2)(c) II, Corp. Code; *Vangel* v. *Vangel,* 45 Cal.2d 804, 808 [291 P.2d 25, 55 A.L.R.2d 1385]), is not valid. The trial judge did not find that plaintiff's attempt to appropriate $10,000 from the partnership was wrongful or caused dissolution; in fact, while not condoning plaintiff's conduct and conceding that "the attempt was such as to destroy any possibility of further trustful association," he said he did not believe that this was "the thing that broke the partnership. . . ."

In the light of plaintiff's statement on pretrial that "he is entitled to: 1/10th" of all partnership good will, unfinished business, assets and accounts receivable as of January 8, 1962, his continued references throughout the trial to 10 partners and his 1/10th interest in the partnership, and his stipulation at the time of trial that he was entitled to 1/10th of the total cash capital on deposit, physical assets and accounts receivable, plaintiff is hardly in a position now to raise for the first time the issue that Leonard S. Lyon, Sr., was not a partner at the time of dissolution by virtue of an oral modification of the partnership agreement on January 1, 1961, and that he (plaintiff) is entitled to 1/9th of the partnership assets. Further, inasmuch as plaintiff was a party to the oral modification of the partnership agreement, he knew at the outset the status of Leonard S. Lyon, Sr. Had he believed his claim to be valid plaintiff could and should have asserted it at least before trial; by his failure to do so, the cause was heard and determined on the basis of his contentions and stipulations that he was entitled to but 1/10th interest in the partnership assets.

Conceding that confusion might result in the use of the name of Lyon & Lyon by both defendants and himself, appellant nevertheless argues that under Paragraph II of the partnership agreement the partners are "joint owners" of the firm name of Lyon & Lyon and the use thereof, that said name is the largest asset owned by the partners and that the restraint against him deprives him of property without com-

pensation; in support of this argument he cites no authority.

Inasmuch as the partnership agreement does not restrict or prohibit a former member from competing with the remaining members of the partnership, and the evidence shows that subsequent to January 8, 1962, plaintiff indeed has competed with defendants and taken with him certain partnership accounts, there is here no issue of competition. Nor is the problem one of ownership or right of use of the firm name, as claimed by appellant, or of the rights of the remaining nine partners, defendants herein. Defendants have retained the firm name of "Lyon & Lyon"; since January 8, 1962, plaintiff, although he has no partner and is a sole practitioner, has practiced law under the name of "Lyon & Lyon." The real problem raised by plaintiff's use of "Lyon & Lyon" is the misrepresentation, fraud and deception which will be and has been perpetrated on the public and the courts. This specifically was the basis of the trial court's injunctive order. In the light of the personal and confidential relationship between lawyer and client, the trial judge's finding—that the public seeking defendants' services, the courts and the United States Patent Office "are likely to believe that plaintiff is associated with or a partner in the firm of Lyon & Lyon, in which defendants are partners, and are truly likely to be and in some instances have been deceived and misled by [plaintiff's] use" of said name—and the court's power of discipline over attorneys at law (art. 6, Bus. & Prof. Code), we can only conclude that the restraining order is proper. It must be conceded by appellant that the use of the firm name of "Lyon & Lyon" does not honestly describe him inasmuch as he practices alone and has no partner, and that the public, seeking the services of defendants but drawn to plaintiff by reason of the firm name, does not correctly know that it is dealing only with him. This is the deception and the misrepresentation which the trial judge seeks to control.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.