[No. B031352. Second Dist., Div. Five. Aug. 4, 1988.]

ROBERT H. FRASER, Plaintiff and Appellant, v.
RAYMOND A. BOGUCKI et al., Defendants and Respondents.

**COUNSEL**

Kindel & Anderson and Paul L. Freese for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard, Steven Mark Levy, Horvitz, Levy & Amerian, Richard Amerian and Loren Homer Kraus for Defendants and Respondents.

**OPINION**

**BOREN, J.**—Robert Fraser appeals from the dismissal of his entire action after the trial court sustained the defendants' demurrer to his complaint and

Fraser waived the opportunity to amend. (Code Civ. Proc., § 581, subd. (f)(1).) Fraser, who is suing his former law partners, advances two arguments for reversal. First, he urges this court to either distinguish "or overrule" *Lyon* v. *Lyon* (1966) 246 Cal.App.2d 519 [54 Cal.Rptr. 829], in which Division One of this District held that a partner is not entitled to be compensated for good will upon the dissolution of a law partnership.[1] Second, he contends that he should be able to proceed to trial on the theory that the defendants dissolved the partnership in bad faith for personal gain. We are not persuaded by Fraser's arguments, and affirm the dismissal of his lawsuit.

### FACTS

Fraser's complaint seeks damages for "the misappropriation of [a] law firm enterprise."[2] According to the allegations of the complaint, Fraser has spent more than 30 years building his career as a patent lawyer, including great amounts of noncompensable time initiating a "law firm enterprise" which required capital investment in a library and office space, plus development of professional associates and a support staff.

In 1960, Fraser and defendant Raymond Bogucki formed a partnership "as an extension of the general enterprise development initiated by plaintiff." Fraser had a 60 percent interest and Bogucki a 40 percent interest in the partnership. A written partnership agreement is not alleged. As the years went by, defendants John Scherlacher, Louis Mok, and Gregory Roth were made partners of Fraser & Bogucki and enjoyed the profits and success of the partnership without making any initial capital contribution.

According to the complaint, Fraser eventually divested himself of his relationships with all of his clients, save one, and his attention to the needs of that client required him to be absent from the state for long periods of time. Accordingly, he became increasingly dependent on the defendants' fiduciary duty to act in his best interests. Instead, it is alleged, forsaking their fiduciary duty and breaching the implied covenant of good faith and fair dealing, his ungrateful partners conspired to remove him from the partnership and "take over the enterprise including the firm name, leasehold, office facilities, staff and general client relations which had been entrusted to them."

---

[1] Although we are not bound by the decisions of another division or district of the state Court of Appeal, we are not, by the same token, empowered to "overrule" decisions from a court of equal dignity.

[2] The facts recounted here are culled from the unproven allegations of plaintiff's complaint because we, like the trial court, are limited to an examination of the face of the pleading when the defendants attack the complaint by demurrer.

The complaint further alleges that the defendants exploited Fraser's vulnerability as a man who has already expended his most productive years and who would be "practically and emotionally disabled from competing with them by starting a new enterprise, if he were ousted and deprived of the support of the organizational structure of the law firm." The defendants accomplished this exploitation of Fraser by dissolving the partnership, instead of simply withdrawing from it, and by seizing control of the enterprise through a purported purchase of its tangible assets and an appropriation of the intangible relationships and values of the enterprise for their own benefit. As an extension of their conspiracy, the individual defendants formed the partnership of Bogucki, Scherlacher, Mok & Roth.

Fraser does not seek an accounting of the tangible assets or accounts receivable of the former partnership. Nor does the complaint allege that the defendants failed to compensate him fully for his share of such partnership assets. But Fraser estimates he has suffered "a loss to his career investment and the certain future returns from this investment having a value in excess of $1,000,000.00." He also seeks emotional damages stemming from the defendants' ingratitude and disloyalty in the amount of $500,000. Finally, Fraser seeks $1 million in punitive damages.

DISCUSSION

1. *Is a Partner Entitled to Compensation for Good Will Upon Dissolution of a Law Partnership?*

 Fraser's complaint scrupulously avoids the words "good will."[3] In his appellate brief, however, he makes it clear that compensation for good will is precisely what he is seeking to recover. Because the *Lyon* case, *supra,* 246 Cal.App.2d 519, prohibits such a recovery, Fraser attempts to persuade us to establish a new precedent. He asserts that good will is now recognized as a valuable asset in a service enterprise, and that *Lyon* misconceives the nature of current law firm practice.

In *Lyon,* the plaintiff, a patent lawyer, sought the dissolution of a law partnership and an accounting. His defendant former partners had ousted him from an earlier partnership by dissolving it and forming a new partnership under the same name. (Five of the defendant former partners were named Lyon.) As part of the dissolution, the defendants had prepared an inventory and appraisal of the tangible assets of the partnership. Plaintiff

---

[3] There are oblique references to the concept in the complaint, such as "external supporting relationships of a valuable nature," "a broad base of advantageous relations," "intangible relationships and values of the enterprise" and so on.

was given his proportionate share of the value of the physical assets and the accounts receivable. He also received all documents connected with the business of those of the firm's clients who indicated that they wished to have plaintiff continue as their attorney. Because the firm's partnership agreement had expressly provided that the partners were the joint owners of the good will acquired by the partnership, plaintiff claimed that he was entitled to receive his share of the value of the good will upon dissolution, as reflected by the expectation of future business of the new partnership formed by the defendants.

The trial court rejected Lyon's claim, and its decision was affirmed on appeal. Writing for the court, Justice Lillie observed that "The nature of a professional partnership for the practice of law, the reputation of which depends on the skill, training and experience of each individual member, and the personal and confidential relationship existing between each such member and the client, places such a partnership in a class apart from other business and professional partnerships. The legal profession stands in a peculiar relation to the public and the relationship existing between the members of the profession and those who seek its services cannot be likened to the relationship of a merchant to his customer." (246 Cal.App.2d at p. 524.) The court concluded that the good will claimed by plaintiff—his expectation of future business—was confidential and personal to each partner and could therefore not be assigned a monetary value or distributed as an asset upon dissolution of the partnership. (*Id.* at p. 526.)

The *Lyon* court relied in part upon the Supreme Court's decision in *Little* v. *Caldwell* (1894) 101 Cal. 553 [36 P. 107]. The court in *Little,* while conceding that a client who contracts with a law firm contracts for the services of all its attorneys, even those who do not personally participate in the client's business, nonetheless concluded that once the partnership was dissolved by the death of a partner, the surviving partner is entitled to his own future earnings and is not required to make an allowance in the settlement of the partnership accounts for the good will of the partnership, or the profits of future business that may be given by clients of the former partnership. (101 Cal. at pp. 559, 561.)

Fraser cites authorities holding that good will is a valuable and divisible marital property asset in support of his contention that newer cases, unlike the *Lyon* case, recognize the value of good will in a personal service enterprise. He fails to note, however, that many of these newer cases expressly distinguish the concept of good will in a marriage dissolution setting—which involves an ongoing professional practice—from a setting such as this, where the professional practice itself is dissolving. For example, this court, in *In re Marriage of Fortier* (1973) 34 Cal.App.3d 384 [109 Cal.Rptr.

915], while agreeing that the good will of a spouse's medical practice accumulated during marriage was community property which was divisible upon the dissolution of the marriage, also made the following observation: " 'Where, as in *Lyon* [citation], the firm is being dissolved, it is understandable that a court cannot determine what, if any, of the good will of the firm will go to either partner. But, in a matrimonial matter, the practice of the sole practitioner husband will continue, with the same intangible value as it had during the marriage. Under the principles of community property law, the wife, by virtue of her position of wife, made to that value the same contribution as does a wife to any of the husband's earnings and accumulations during marriage. She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business.' " (34 Cal.App.3d at p. 389, fn. 4, quoting *Golden* v. *Golden* (1969) 270 Cal.App.2d 401, 405 [75 Cal.Rptr. 735].) Accord: *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 107 [113 Cal.Rptr. 58].

Our independent research reveals that courts in other jurisdictions which have confronted the issue of whether good will is a distributable asset of a law firm have, with one exception, followed the reasoning in the *Lyon* decision. In *Bump* v. *Stewart, Wimer & Bump, P.C.* (1983, Iowa) 336 N.W.2d 731, the Supreme Court of Iowa concluded that good will could not be included as an asset in determining the value of a professional law corporation from which the plaintiff claimed he had been ousted. Quoting the *Lyon* case with approval, the *Bump* court likened plaintiff's claim to a portion of the firm's good will to the sale or purchase of a law practice, which it found was contrary to public policy because clients are not chattels and cannot be forced to accept the services of a particular attorney. (*Id.* at pp. 736-737.) Accord: *Siddall* v. *Keating* (1959) 8 App.Div.2d 44 [185 N.Y.S.2d 630, 632-633], affirmed 7 N.Y.2d 846 [196 N.Y.S.2d 986, 164 N.E.2d 860]; *Matter of Silverberg* (1980) 75 App.Div.2d 817 [427 N.Y.S.2d 480, 482].

It appears that the only case which adopts the reasoning advanced by appellant is *Spayd* v. *Turner, Granzow & Hollenkamp* (1985) 19 Ohio St.3d 55 [482 N.E.2d 1232]. There, the Supreme Court of Ohio recognized the argument that Fraser makes in his brief; namely, that the earlier cases involved "traditional" law firms comprised of only a few attorneys whereas today's law firms have evolved, in some instances, into multi-branch businesses consisting of over a hundred lawyers plus large support staffs. Apparently, the reasoning which is being applied by Fraser and the *Spayd* court is that because some firms have become more business-oriented, we should discard the "outdated" notion that clients have a personal and confidential relationship with individual attorneys within firms and conclude that good

will is firm property which may be divided up among the attorneys upon dissolution.

We disagree with Fraser's view of the fungible nature of the lawyer-client relationship. He overlooks the high degree of trust and confidence inherent in this type of fiduciary relationship. The measure of that trust and confidence is the client's election to retain one or another lawyer within a law partnership when the partnership dissolves. We fail to see why a lawyer such as Fraser should be permitted to share in expected future profits from clients who have elected not to retain his services. Nor do we savor the prospect of innumerable lawyers from defunct law firms suing each other because some of them were more successful than others in attracting new business from old clients following the dissolution of a partnership.

■ Payment for good will following the break-up of a law partnership is, moreover, barred by California's Rules of Professional Conduct. Rule 2-108(A) prohibits the division of fees for legal services among lawyers who are not partners or associates within the same firm, unless the client consents in writing and the fee bears a reasonable relationship to the services rendered by all of them. By demanding payment for good will, which Business and Professions Code section 14100 defines as "the expectation of continued public patronage," Fraser seeks to profit from services which may be rendered by his former partners, though he will have no professional responsibility for the handling of the cases. The division of fees without regard to services actually rendered is contrary to the public policy stated in Rule 2-108. (*Matter of Silverberg, supra,* 427 N.Y.S.2d at p. 482.)

■ The trial court properly concluded that Fraser cannot state a claim for good will.

2. *Has Plaintiff Stated a Cause of Action for Bad Faith Dissolution of a Partnership?*

■ Fraser argues that his complaint sufficiently alleges a cause of action for the bad faith dissolution of the partnership of Fraser & Bogucki based on the defendants' exploitation of his age and his entrustment to them of clients, staff and other unspecified resources.

Fraser relies in large part upon this Division's opinion in *Rosenfeld, Meyer & Susman* v. *Cohen* (1983) 146 Cal.App.3d 200 [194 Cal.Rptr. 180] in support of his contention. His reliance is misplaced. The *Rosenfeld* case only provides a remedy where a lawyer violates his fiduciary duty to his partners by attempting to reap personal gain from the unfinished business of a dissolved partnership. The defendants in that instance had purported to

cut off the rights of their former partners by dissolving the partnership shortly before trial in an enormous contingency fee case, and expropriating the fee that was ultimately earned by forming a "new" contract with the same client. We concluded that the defendants could not accept and carry on for their sole gain unfinished business which constituted a portion of the assets of the dissolved partnership, and observed that "The partner may take for his own account new business even when emanating from clients of the dissolved partnership and the partner is entitled to the reasonable value of the services in completing the partnership business, but he may not seize for his own account the business which was in existence during the terms of the partnership." (146 Cal.App.3d at p. 220.)

Fraser has not alleged—and he concedes that he does not seek leave to allege—that the defendants in this case have denied him his share of the proceeds from the unfinished business of the dissolved partnership. Rather, he seeks to recover for the defendants' earnings from *new* business emanating from the clients of the dissolved partnership. As we have already stated above, Fraser has no right to share in proceeds from future business from the dissolved partnership's former clients who elected to retain the services of Bogucki, Scherlacher, Mok & Roth. Fraser has therefore failed to state a cause of action for a bad faith dissolution of a partnership.

DISPOSITION

The judgment is affirmed.

Lucas, P. J., and Ashby, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 9, 1988.