SHORTESS, Judge.
These consolidated cases arose from the dissolution of a partnership known as Seale, Sledge, Macaluso & Ross, which was engaged in the general practice of law, at 107 South Cherry Street in Hammond, Louisiana. Originally, T. Jay Seale, III, and Stephen C. Sledge practiced together and were later joined by Kenneth L. Ross. Ron S. Macaluso joined the firm in June of 1978. A written partnership agreement was finalized on January 1,1979. On April 19, 1979, the firm was dissolved and Seale, Macaluso and Ross (appellees) formed a new partnership. Sledge (appellant) began an individual practice of law.
*1029 When the parties could not agree to an amicable distribution of assets and liabilities, each side brought suit generally seeking dissolution, an accounting, and a partition of the partnership. After a lengthy and protracted trial, the trial court issued written findings of fact. The applicable findings in connection with the issues presented in this appeal are:
“I.
In May of 1977, a Louisiana partnership was formed for the practice of law named ‘Seale, Sledge, Maealuso and Ross’-.
II.
The parties percent of interest in the assets and liabilities of the partnership at the time of dissolution is as follows:
T. Jay Seale, III — Thirty Percent Stephen C. Sledge — Thirty Percent Ron S. Maealuso — Thirty Percent Kenneth L. Ross — Ten Percent
III.
This partnersip (sic) began on a cash accounting basis and remained in that format throughout its existence.
IV.
The partnership dissolved effective April 19, 1979, in accordance with its written partnership agreement.
V.
The partnership had no interest in any attorney’s work in progress files and/or cases.
VI.
Inasmuch as the partnership was on a cash basis, the partnerships interests arose when that file and/or case actually produced cash income.
VII.
During the existence of the partnership the individual attorney’s work in progress and/or files remained the sole property of the respective attorney.
VIII.
At the time of the partnership’s termination the individual attorney’s work in progress and/or files were divided in-kind pursuant to respective attorney’s ownership.
IX.
Specifically, the work in progress or the file known as ‘Fredrick- J. Meyer’ was the sole property of Ron S. Maealuso.
X.
The ‘Fredrick J.' Meyer’ case had not been compromised, settled, resolved or reduced to cash fee on or before the partnership’s termination of April 19, 1979.”
Additionally, the trial judge found that there was no practical or legal necessity for the appointment of a liquidator.
The only issue on appeal[1] in this dissolution, is the distribution of a contingency fee, which amounted to $191,421.36, from the settlement of the case, “Frederick J. Meyer, et al. vs. J.T. Douglas, et al.” (Meyer) on June 19, 1979.[2] Seale and Ross testified that the Meyer case remained Ma-caluso’s private file when he joined the *1030 firm, so that the partnership agreement as to the division of income[3] was not applicable to the Meyer fee. The Meyer suit was filed on February 4, 1976, while Macaluso was in practice with Ronald Curet. He brought the Meyer file as well as others with him when he began practice with Seale, Sledge and Ross. Had there been no dispute over distribution of the Meyer fee, according to the partnership agreement and rounding the fee to $190,000.00, it would have been divided as follows:
$95,000.00 to the general operations account of the Seale, Sledge, Macaluso & Ross partnership
$47,500.00 to Macaluso (one-half of remaining fee to procuring partner)
$47,500.00 to Seale, Sledge, Macaluso & Ross according to their partnership interest ($14,250 to Seale; $14,250 to Sledge; $14,250 to Macaluso; and $4,750 to Ross)
Macaluso testified that he made it clear when he “came aboard” that the Meyer fee would be his. It is not disputed that Maca-luso devoted the greatest amount of time in working this file; that Seale devoted a considerable amount of time to the case; that Sledge did some investigative work but not a great amount; and that Ross did not work on the file. The testimony also indicates that as the case progressed, the firm advanced funds and all the partners individually signed a continuing guaranty to Citizens National Bank for $11,809.99 when the Meyers needed funds to pay medical expenses incurred as a result of the accident sued upon. Macaluso insisted that his partners would only share in the Meyer fee in accordance with the pattern determined by him. He divided it so that approximately $100,000.00 went into the general operations account of Seale, Macaluso & Ross; $30,000.00 went to Seale; $5,000.00 went to Ross; and the balance went to him.
Ross on cross examination, reiterated his understanding that there were no mechanics for an accounting if a partner left the firm before a fee was in hand from a file. He testified that since the firm was on a cash basis, a file or fee therefrom was not considered an asset until the cash was in hand; and that he did not know how the Meyer fee would have been distributed had it been earned prior to dissolution. He conceded that the principals would have shared to some extent, but then said there was no guarantee that they would have participated because it all depended on Macaluso.
Sledge’s testimony was diametrically opposed to that of his former partners. He testified that he, Seale and Ross transferred a portion of their interest in their firm to Macaluso with the understanding that whatever files Macaluso had coming in would be part of the firm and any fee earned therefrom would be distributed in accordance with the partnership agreement; that thereafter, all fees from Seale and Sledge files were distributed in accordance with the partnership agreement; that the Meyer case was never discussed during the formation of the partnership.
Appellees direct our attention to Donald v. Glazer, 194 So.2d 176 (La.App.2nd Cir. 1967), writ refused, 250 La. 467, 196 So.2d 533 (1967), which they characterize as the leading case in this field. They argue that *1031 this case makes it clear that work in progress does not become an asset in terms of money until the work is completed and the fee is paid when a firm is on a cash basis. Appellees’ reliance upon Donald v. Glazer, supra, is misplaced. The Second Circuit did say therein that accounts receivable from an accounting partnership handled on a cash basis were not considered as income or an asset until collected, and that a partner had no proprietary interest in accounts which were uncollected as of the date on which the partnership was dissolved, because the accounts belonged to individual partners. The case was remanded by the Second Circuit for an evidentiary hearing on the issue of fees and again appealed, at 208 So.2d 4 (La.App. 2nd Cir. 1968). Finally, the Supreme Court granted certiorari at 252 La. 120, 209 So.2d 43 (1968). Its decision, at 253 La. 811, 220 So.2d 84 (1969), contains the following language:
“The Court of Appeal held, in effect, that when this personal service partnership operating on a cash basis was dissolved, with no special agreement governing liquidation, the withdrawing partners lost their interests in the uncollected accounts receivable owed to the partnership on the date of dissolution. In so holding, we think the Court of Appeal erred. We do not, however, reach the merits of this holding.” 220 So.2d at 85
Additionally, our Supreme Court, in Due v. Due, 342 So.2d 161 (La.1977), in dealing with the rights of spouses in contingency fee contracts upon dissolution of the community, made this observation:
“In the everyday world, when a partnership dissolves or a partner withdraws from his law firm, the valuation of the interest of a lawyer in the contingent fee contracts and the appropriate accounting has usually been accomplished by agreement, without undue difficulty, on the basis of informed estimates as to the prospective recovery or settlement value of each case, the chances of loss, and the amount of work involved before and after the dissolution or withdrawal.” 342 So.2d at 166, footnote 5.
Many factors are present in this case which must be considered in determining whether the attorneys fee should have been considered an asset of this firm on dissolution:
1. All fees went into the partnership accounts.[4]
2. All firm expenses, including those from the Meyer file, were always absorbed by the firm.
3. All the partners individually signed the continuing guaranty to Citizens National Bank in connection with the Meyer loan.
4. A written agreement dated February 22, 1979, and signed or initialed by all the partners provided that Sledge, “... assigns his interest in the extraordinary fee income to be derived from trial or settlement of the case entitled ‘FREDERICK J. MEYER VS. J.T. DOUGLAS, ET AL’; ...”
5. After formation of the firm, all fees were shared, except the Meyer fee, which came less than two months after dissolution; and serious negotiations were in progress prior to dissolution.
6. The partnership agreement itself makes no mention of individually retained files.
7. The partnership agreement contains no specific language relative to dissolution of the partnership.
8. When the firm went on a computer, the Meyer file was assigned a regular number which gave no indication that it was not partnership property.
Considering all of these factors and the law as set forth above, we are convinced that the trial judge was “clearly .wrong” factually and legally in finding that the partnership had no interest in this fee until it was in hand. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
*1032 We affirm the trial court’s decision in all respects, except its treatment of the Meyer fee[5] and remand the case, so a determination can be made as to the partnership interest in that fee as of April 19, 1979.
All costs of this appeal are taxed to Seale, Macaluso, and Ross.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. Another issue urged was the failure of the trial court to appoint a liquidator. Appellant conceded at oral argument that, at this late date, it would serve no good purpose to appoint a liquidator. In view of that concession and the well-established legal principle that the appointment of a liquidator rests in the sound discretion of the court, which is to be exercised or not as circumstances of each case demand, we find no abuse of discretion and will not treat this issue. In Re Nelson, 256 So.2d 843 (La.App. 4th Cir. 1972)

. Settlement negotiations had been ongoing since at least February 16, 1979. On April 16, 1979, the Meyers agreed with Seale and Maca-luso’s written proposal of settlement for $504,-950.00. The case ultimately settled for $499,-950.00.

. “ARTICLE IX PROFIT AND LOSSES

B. INCOME
1) All income of whatever source which inures to the benefit of a partner from the exercise of his practice of law shall be deemed partnership, to which no partner has an individual property right or claim.
2) Ambiguities in the source of income or in allocation to particular partners shall be resolved in favor of the firm.
3) Fees less than $5,000.00 shall be considered ‘ordinary’ and shall be subject to no allocation among partners, being considered part of the firm’s regular cash flow.
4)Fees greater than or equal to $5,000.00 shall be considered ‘extraordinary’ and shall be subject to the following apportionment principles of vesting:
1. One half of fee or actual cost including time billed at the normal fate per hour of the Partnership whichever is greater will go to the Seale, Sledge, Macaluso, and Ross general operations account.
2. One'.half of the remaining fee will go to the Procuring Partner.
3. The other one-half of the remainging (sic) fee will go to the partners by percentage of ownership.”

. Some fees were not distributed in accordance with Article IX of the partnership agreement, but in those cases, the entire fee was placed in the general operations account to help the cash flow problem. Theoretically, in such cases, the partners’ capital accounts should have then benefited.

. Both sides conceded on oral argument that the Meyer fee was the only issue before the court.”