No. 92-615

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993


SAM E. McDONALD,

      Plaintiff and Respondent,

  v.

JACK ANDERSON (deceased),
HELEN Y. ANDERSON,

      Defendant and Appellant.

FILED

OCT 29 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          John J. Cavan, Cavan, Smith & Cavan,
          Billings, Montana

      For Respondent:

          W. Scott Green, Attorney at Law,
          Billings, Montana


Submitted on Briefs:  April 15, 1993

Decided:  October 29, 1993

Filed:


_____
          Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Defendant Helen Anderson appeals from a decision of the District Court for the Thirteenth Judicial District, in Yellowstone County, which granted summary judgment to plaintiff Sam McDonald. The District Court concluded that defendant Jack Anderson fraudulently conveyed property to his spouse, Helen. The court issued an order to set aside the fraudulently transferred property and allow Sam McDonald to enforce a prior judgment. We affirm.

The sole issue on appeal is whether the District Court erred when it granted summary judgment to McDonald.

In June 1978, Jack and Helen Anderson purchased a residence in Billings by contract for deed. In November 1984, Jack Anderson (Anderson), Sam McDonald, and a third party formed a partnership named Airport Metra Inn Partnership. The purpose of the partnership was to own and operate a motel and restaurant complex known as the Airport Metra Inn. Each partner owned 33 and 1/3 percent of the partnership. The partnership purchased the Airport Metra Inn on contract for deed from John Q. Hammond, and pursuant to the contract, the partners were obligated to make balloon payments to Hammond.

On September 10, 1986, Anderson conveyed all of his personal property and his contract interest in his residence to his spouse, Helen. The value of the transferred property was $100,000; of that amount, $25,000 represented the value of his personal property. Anderson did not receive any consideration from his spouse in

exchange for the property that he conveyed to her. Anderson did not transfer his partnership interest to Helen.

In the months preceding September 1986, the partners were involved in discussions and negotiations for the sale of the Airport Metra Inn. At the time of Anderson's property conveyance, the partnership owed substantial back taxes which had been assessed to the Airport Metra Inn, and balloon payments on the Hammond contract were imminent.

On December 15, 1986, approximately three months after Anderson's property conveyance to his wife, the partnership sold the Airport Metra Inn to Terrence Liu for $1,525,000. On December 31, 1986, the partnership borrowed $580,000 from the First Security Bank of Livingston to pay the back taxes on the Airport Metra Inn and to make the balloon payments on the Hammond contract. The parties do not dispute that the back taxes and balloon payments had to be paid before the Liu contract could be performed.

All three partners signed the Livingston Bank note which stated that they were jointly and severally liable on the note as partners and individual guarantors. Because the payments on the Liu contract were insufficient to service the underlying debt obligation of the partnership to the Livingston Bank, McDonald paid the deficiency with his own funds.

Anderson did not make his share of the payments on the bank note and McDonald paid Anderson's share. In May 1988, McDonald filed a lawsuit against Anderson for contribution of his obligation under the $580,000 note. McDonald subsequently filed a motion for

3

summary judgment. On August 8, 1989, the District Court granted summary judgment in favor of McDonald and ordered Anderson to pay contribution to McDonald for those bank loan installments which were made by McDonald.

On December 15, 1989, Jack and Helen Anderson executed a Declaration of Homestead on their residence.

On January 10, 1990, the District Court entered a judgment in McDonald's favor for $15,081.81 at a rate of 10 percent per annum. In April 1990, pursuant to a writ of execution, $513.82 was collected from Anderson's bank account pursuant to the judgment.

On August 14, 1990, Anderson appeared at a judgment debtor examination before the Honorable Pedro Hernandez, a Justice of the Peace. At the hearing, McDonald's attorney questioned Anderson about his financial situation to ascertain whether he had any assets from which McDonald could collect his judgment. Anderson testified that he transferred his assets to his wife on September 10, 1986. He explained that this transfer included all of his interest in his house, car, clothes, insurance policies, and other personal property. Anderson testified that every month he received a social security retirement check and an army retirement check and that he gifted this income to his spouse. He explained that his spouse used the gifted checks to pay for his health insurance, life insurance, and day-to-day living needs; and that his wife paid for these expenses as a gift to him.

On September 25, 1990, McDonald filed this action. He alleged that Anderson conveyed his property to his spouse on September 10,

4

1986, to avoid liabilities that he owed to his creditors. McDonald requested the court to set aside the property transfer in order to allow him to enforce his January 10, 1990, judgment. Both parties filed motions for summary judgment in which they contended that there were no issues of material fact.

Anderson died on December 2, 1990, and Helen was substituted as a defendant. In April 1991, Helen sold the Anderson residence. On June 10, 1991, Helen and McDonald entered into a substitution of security agreement. They placed in escrow a contract for the sale of Anderson's home from which McDonald's judgment could be collected.

On September 23, 1992, the District Court granted summary judgment in favor of McDonald and ordered Anderson's property transfer to his spouse to be set aside as a fraudulent conveyance. The court relied on the Uniform Fraudulent Conveyance Act (UFCA), which was the law in effect at the time of Anderson's property transfer. The court determined that §§ 31-2-311, -313, -314, and -315, MCA, of the UFCA were applicable and that the elements of each statute were satisfied. The court concluded that § 31-2-313, MCA, which pertains to a conveyance made by a person about to incur debts, was the most applicable statute based on several findings.

The court found that Anderson was a partner and the hotel manager of the Airport Metra Inn at the time of the property transfer in September 1986; and therefore, he was aware of the partnership's financial status, its valuation, its outstanding contract obligations (with Hammond and Liu), its current

5

liabilities (back taxes and balloon payments), and its potential liabilities (the bank loan with the Livingston Bank in December 1986). For the court, the timing of the property transfer, and the fact that Anderson had knowledge about the partnership's liabilities, cast doubt on a transfer already suspect because it was a conveyance to a spouse, made without consideration. Moreover, it involved property over which Anderson gave up no control, possession, or beneficial use. The court concluded that Anderson fraudulently transferred his property for the purpose of avoiding present and future creditors. From that decision, Anderson appeals.

The purpose of summary judgment is to encourage judicial economy through the elimination of any unnecessary trial. However, summary judgment is never to be a substitute for trial if there is an issue of material fact. *Reaves v. Reinbold* (1980), 189 Mont. 284, 288, 615 P.2d 896, 898. Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.

The party seeking summary judgment has the burden of demonstrating a complete absence of any genuine factual issues. *D'Agostino v. Swanson* (1990), 240 Mont. 435, 442, 784 P.2d 919, 924; *Cereck v. Albertson's, Inc.* (1981), 195 Mont. 409, 411, 637 P.2d 509, 511. The burden then shifts to the nonmoving party who must show the existence of a genuine issue in order to prevail. *O'Bagy v. First Interstate Bank of Missoula* (1990), 241 Mont. 44, 46, 785 P.2d 190, 191.

6

To meet this burden, the nonmoving party must offer substantial evidence, not mere speculation and conclusory statements. *First Sec. Bank of Bozeman v. Jones* (1990), 243 Mont. 301, 303, 794 P.2d 679, 681. All reasonable inferences that may be drawn from the offered proof must be resolved in favor of the party opposing summary judgment. *Payne Realty and Housing, Inc. v. First Security Bank of Livingston* (1992), 256 Mont. 19, 24-25, 844 P.2d 90, 93.

The Uniform Fraudulent Conveyance Act (UFCA) was the substantive law in effect in 1986, the time when Anderson transferred his assets. The Montana Legislature repealed the UFCA in 1991 and enacted the Uniform Fraudulent Transfer Act (UFTA). However, because the UFTA does not expressly state that it is retroactive, we will apply the UFCA, which was the law in effect at the time of the conveyance at issue. *Towe Antique Ford Foundation v. I.R.S.* (D. Mont. 1992) 791 F. Supp. 1450, 1457-58.

We conclude that, at least with regard to § 31-2-315, MCA (1985), the District Court correctly concluded that plaintiff was entitled to judgment as a matter of law. That section of the UFCA provides that:

> **Certain transfers presumed fraudulent.** Every transfer of personal property, other than a thing in action, and every lien thereon, other than a mortgage, when allowed by law, made by a person having at the time the possession or control of the property, not accompanied by an immediate delivery and followed by an actual and continued change of possession of the things transferred is conclusively presumed to be fraudulent and therefore void against:
>
> (1) those who are his creditors while he remains in possession;

7

(2)   the successors in interest of such creditors;

(3)   any persons on whom his estate devolves in trust for the benefit of others than himself; and

(4)   purchasers or encumbrancers in good faith subsequent to the transfer.   [Emphasis added].

According to § 31-2-315, MCA (1985), and the undisputed facts, at least some of Anderson's personal property was conveyed fraudulently.

Section 31-2-301(3), MCA, provides that a "creditor" is "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent."   McDonald obtained a judgment against Anderson on January 10, 1990, for $15,081.81.   At the time of the judgment debtor hearing in August 1990, only $513.82 had been collected from Anderson's bank account pursuant to McDonald's judgment.   Therefore, McDonald was a creditor of Anderson's at the time of the judgment debtor hearing.

At the hearing, Anderson testified that he transferred all of his personal property to Helen, including his clothes, insurance policies, and income checks.   However, the evidence is clear that despite the transfer, Anderson continued to retain possession or control of such property.   Anderson testified that the clothes he wore at the judgment debtor hearing were owned by his wife.   Yet despite her ownership of the clothes, he continued to wear them.

Anderson testified that his health insurance and life insurance policies covered him, but that his wife owned them.   He testified that he gifted his monthly income checks to his wife, and that she spent this income on his health insurance, life insurance,

8

and day-to-day living expenses. It is clear that although Anderson transferred his insurance policies and money to Helen, he still held control and possession of these items of personal property. His wife used _his_ income checks to pay for _his_ living expenses and to make payments for _him_ on _his_ insurance policies.

The record reveals that after McDonald obtained a judgment against Anderson, Anderson remained in possession of the personal property he claimed he transferred.

Based on the facts and the clear meaning of § 31-2-315, MCA, we conclude that the District Court did not err when it determined, as a matter of law, that Anderson's transfer of his personal property to his wife was fraudulent regarding creditors, including McDonald. Therefore, the District Court did not err when it declared the transfer of these items of personal property invalid.

Prior to the District Court's judgment, the parties stipulated that certain property owned by Helen Anderson could be set aside to satisfy any judgment obtained by McDonald. Therefore, we need not consider with greater particularity the items of personalty retained by Anderson, nor the value of the individual items.

The judgment of the District Court is affirmed.

_____
Justice

9

We concur:

_John Conway Harrison_

_William E. Hunt Sr_

_Karla M. Gray_

Justices

10

October 29, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

John J. Cavan, Esq.
CAVAN, SMITH, GRUBBS, & CAVAN
P.O. Box 1297
Billings, MT 59103

W. Scott Green, Esq.
W. SCOTT GREEN, P.C.
301 North 27th St.
Billings, MT 59101

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy