**SMITH, KELLER & ASSOCIATES,
a Wyoming general partnership,
Appellants (Plaintiffs),**

v.

**DORR & ASSOCIATES, a partnership; Dorr, Bentley & Pecha, a partnership; Dorr, Bentley & Pecha, Certified Public Accountants, a Limited Liability Company; Bill Dorr; Dorr Investments; First Interstate Bank of Commerce; Steven K. Bentley; Steven K. Bentley, P.C.; Mark Dorr; Dorr, Bentley & Pecha, P.C.; Dorr, Bentley & Pecha, a CPA Network; Barbara Elizabeth Dorr; and Stephen H. Pecha, Appellees (Defendants).**

**DORR, BENTLEY & PECHA, P.C.; Steven K. Bentley, P.C.; Mark Dorr; Barbara Elizabeth Dorr; and Stephen H. Pecha, Appellants (Defendants),**

v.

**SMITH, KELLER & ASSOCIATES,
a Wyoming general partnership,
Appellee (Plaintiff).**

**Nos. 93–130, 93–157.**

Supreme Court of Wyoming.

June 9, 1994.

Don W. Riske of Riske & Arnold, P.C., Cheyenne, Wyoming; Patrick Vellone of Vinton, Waller, Slivka & Panasci, Denver, CO, for appellant in Case No. 93–130 and appellee in Case No. 93–157.

Greg L. Goddard of Goddard, Perry & Vogel, Buffalo, James Edwards of Stephens, Edwards & Hallock, Gillette, for appellees in Case No. 93–130.

Ernest W. Halle, Cheyenne, for Dorr & Associates.

Greg L. Goddard of Goddard, Perry & Vogel, Buffalo, for appellants in Case No. 93–157.

Before THOMAS, CARDINE and GOLDEN, JJ., BROWN and ROONEY, JJ. (Retired).

BROWN, Justice (Retired).

The parties to this appeal, partners in two existing accounting firms, formed a third partnership styled Dorr, Keller, Bentley & Pecha (DKBP). The DKBP partnership dissolved in May, 1989, and since then the parties have been engaged in continuous litigation. In this instance, the district court granted a partial summary judgment in favor of the individuals who formed former partner Dorr and Associates (D & A). The district court determined that D & A had not breached any fiduciary duties owed to former partner Smith, Keller and Associates (SK & A) and denied a second post-dissolution accounting of the partnership assets. In another ruling, the district court granted partial summary judgment in favor of SK & A. The district court ruled that some assets of the DKBP partnership had been fraudulently conveyed to business entities associated with the individuals who formed D & A (collectively the Dorr faction). After the district court certified that there was no just cause for delay, all parties filed separate appeals.

We reverse and remand.

## I. ISSUES

The two appeals were consolidated for oral argument and disposition. In case No. 93–130, appellants, SK & A, specify the issues to be:

1. Did the district court have jurisdiction to interpret the meaning of a confirmed arbitration award in order to deny the Appellants the right to an accounting during the winding up period of a partnership?

2. Did the district court commit reversible error by determining that a partner,

who fraudulently conveyed the partnership assets it held in trust during the winding up period of a partnership, has not breached the fiduciary duties it owes to its co-partners and the partnership?

3. Did the district court commit reversible error in determining that in winding up a partnership, the relief and procedures set forth in the Wyoming Uniform Fraudulent Conveyances Act are identical to the relief and procedure set forth in the Wyoming Uniform Partnership Act?

4. Where a partnership is a partner in a second partnership, are the individual partners of the first partnership responsible for the duties and obligations owed by the first partnership to the second partnership?

In case No. 93–157, appellants, the Dorr faction, designate the issues as:

1. Did the trial court correctly rule that assets of Dorr, Keller, Bentley & Pecha were fraudulently conveyed?

2. Was the July 30, 1990, stipulated arbitration order—set aside by Judge Kalokathis—correctly confirmed by the trial court?

3. Is goodwill or client base an asset that can be fraudulently conveyed?

4. Is goodwill subject to creditor's claims?

## II. FACTS

The parties were in partnership for sixteen months, January 1, 1988 to May 4, 1989, and have been in litigation for fifty-seven months. The DKBP accounting partnership was established by the joinder of two existing accounting partnerships, D & A and SK & A. According to the DKBP partnership agreement, D & A contributed $750 in capital to the DKBP partnership, and SK & A contributed $250 in capital. Each partner was then entitled to a corresponding share of the profits. D & A also brought an established *client base* from its Gillette, Wyoming office into the partnership. SK & A brought a *client base* from its Cheyenne, Wyoming office into the partnership.

The DKBP partnership agreement provided a specific procedure in the event of dissolution "within 24 months of the formation of this partnership[.]" Under the DKBP partnership agreement, D & A or SK & A could dissolve the partnership without the consent of the other by providing notice thirty days in advance of dissolution. If dissolution occurred by this procedure, the DKBP partnership agreement provided: "In this case only, each party shall take back those assets and/or liabilities it brought to the partnership." SK & A dissolved the DKBP partnership by notice effective May 4, 1989. In accord with the terms of the partnership agreement, the disputes that followed were first submitted to arbitration.

This is the second time the parties have visited this court. *Dorr, Keller, Bentley & Pecha, et. al. v. Dorr, Bentley & Pecha*, 841 P.2d 811 (Wyo.1992) (*Dorr I*). In *Dorr I*, we held *inter alia* that full effect had not been given to the arbitration awards dated August 24, 1989, and October 1, 1989 (*nunc pro tunc* order) (collectively first arbitration award). Following the publication of the decision in *Dorr I*, the district court confirmed another arbitration award dated July 30, 1990 (second arbitration award). No party chose to challenge by appeal the confirmation of these arbitration awards.

In February, 1990, before the confirmation by the district court of the first arbitration award, D & A filed for a Chapter 11 bankruptcy which was later converted to a Chapter 7 bankruptcy. The estate of D & A has been placed in the hands of a Chapter 7 trustee. *Dorr I*, 841 P.2d at 815. Since the dissolution of DKBP partnership on May 4, 1989, and until the present, SK & A has attempted to regain DKBP assets alleged to have been fraudulently conveyed by the Dorr faction. SK & A has also attempted to obtain DKBP business records and other assets so that the affairs of DKBP may be wound up and that partnership terminated. It is not entirely clear what happened to DKBP property after dissolution.[1]

---

1. SK & A contend that on August 16, 1989, D & A and individual partners fraudulently conveyed all the DKBP assets to Dorr, Bentley & Pecha,

Certified Public Accountants, a Limited Liability Company (LLC) and that on or about March 24, 1990, Dorr, *et al.*, again fraudulently conveyed

In the first arbitration award, the panel found that SK & A contributed the following assets to DKBP as of January 1, 1988:

> Cheyenne client base, certain equipment, Cheyenne office space and Cheyenne telephone numbers. Prior to entering into the Partnership Agreement, the parties had the understanding that Mr. Keller desired to reduce the amount of time he spent on "mainstream" accounting activities such as tax work, preparation of financial statements and bookkeeping, and to devote more time to "special projects" within the accounting practice, such as litigation support, arranging of financing and buying and selling of businesses, and also to devote more time to his outside business activities which included a stock brokerage firm. Consistent with that understanding, Mr. Keller made efforts to introduce his clients to Dorr partners and arranged to have his clients' work done by them.

The first arbitration award resulted from an accounting of DKBP at the time of dissolution. However, following dissolution, some of the tangible property SK & A contributed to the partnership may have been foreclosed upon. Some may have been appropriated by the Dorr faction or their subsequent business entities, the LLC and PC.

SK & A is most concerned about the intangible property of DKBP, especially the *client base* of the Cheyenne and Gillette offices of the DKBP partnership. In the first arbitration order dated August 24, 1989, the majority of the arbitration panel concluded that, as a matter of law, D & A should have returned "the client base of the Cheyenne office" to SK & A. As a result of this breach of the DKBP partnership agreement by D & A and the failure to pay earned compensation, damages of $105,163.78 were awarded by the first arbitration panel to SK & A.

DKBP assets from the LLC to Dorr, Bentley & Pecha, a Professional Corporation (PC).

2. This revisit to the arbitration panel was without notice to the Dorr faction. D & A was represented in this second visit to the arbitration panel by Thomas Hogan, who was the trustee in bankruptcy for D & A.

The Dorr people continue to object to the way this second arbitration was accomplished. The district court was not too happy about it either.

It was not clear to those involved in the proceedings after the first arbitration award whether termination had been accomplished and what, if anything, further should have been done. After some jousting in the district court, SK & A went back to the arbitration panel for further enlightenment.[2] In this proceeding, the second arbitration panel determined, in pertinent part:

> 2. The issues presented must be resolved by reference to the Wyoming Uniform Partnership Act (W.S. 17–13–101 et seq) and Wyoming case law.

> 3. Under such authority, a partnership cannot be terminated unless and until its affairs have been settled and fully wound up. The Dorr, Keller, Bentley & Pecha partnership has not completed a settlement of its affairs and is, therefore, not terminated.

> 4. Pursuant to W.S. 17–13–609, Smith, Keller & Associates has the right to wind up the affairs of the Dorr, Keller, Bentley & Pecha partnership.

The arbitration panel answered specific issues presented to it as follows:

> a. Whether the Dorr Keller Bentley & Pecha partnership was terminated as of May 4, 1989.

> RESPONSE: No.

> b. Whether the Dorr Keller Bentley & Pecha partnership was terminated as of August 24, 1989, the date that the Arbitration Panel issued its Findings of Fact, Conclusions of Law and Award.

> RESPONSE: No.

> C. Whether the Dorr Keller Bentley & Pecha partnership can be terminated prior to the winding-up of its affairs including the marshalling of all assets of the partnership, the payments of debts and distribu-

We are not entirely delighted, but do not have a practical suggestion as to what should have been done. We determined in *Dorr I*, consistent with FED.R.BANKR.P. 2002(a)(3) and 9019 that a debtor (Dorr) was not entitled to notice of arbitration. *Dorr I*, 841 P.2d at 816. We see no reason to depart from our determination in *Dorr I*. It would be presumptuous and improper for this court to add the requirement of notice to a debtor in bankruptcy.

tion of remaining assets pursuant to W.S. 17–13–612.

RESPONSE: No.

d. Whether the filing of a bankruptcy petition by Dorr & Associates on February 1, 1990, imposes a duty upon Smith, Keller & Associates as the non-bankrupt partner of Dorr, Keller, Bentley & Pecha, to proceed as the liquidating partner of such partnership, to marshall the assets of the partnership, liquidate such assets if required to discharge all debt, pay all debts of the partnership and distribute the net proceeds thereof pursuant to W.S. 17–13–612.

RESPONSE: Yes.

e. If such partnership has not been terminated, what assets belong in such partnership?

RESPONSE: All assets originally contributed by both partners, assets acquired between January 1, 1988 and May 4, 1989, and all profits derived from such assets until the date of final settlement and termination. Such assets specifically include the client bases of the Gillette and Cheyenne offices, all accounts receivable, work in process, furniture, fixtures and equipment, leaseholds, business telephone numbers, logos and trademarks and marketing programs.

f. Whether the August 24, 1989, Award of this panel included consideration of matters arising after May 4, 1989.

RESPONSE: No.

After this court's remand in *Dorr I*, the parties engaged in extensive litigation in the district court to presumably enforce the arbitration awards. The SK & A complaint has been amended several times. The answer from the Dorr faction lists eight affirmative defenses, including discharge in bankruptcy.[3]

In an effort to bring some finality to these proceedings, the district court granted two partial summary judgments. The first partial summary judgment was granted in favor of the Dorr faction. The district court determined that D & A had not breached any fiduciary duties owed to SK & A and determined that there was no need for a second post-dissolution accounting of the DKBP partnership. (Case No. 93–130). SK & A had filed a cross motion for summary judgment on this same issue. SK & A argued that D & A had breached a fiduciary duty following dissolution and that SK & A was entitled to an accounting of the profits earned from services performed for DKBP clients. The district court denied the motion for partial summary judgment filed by SK & A.

The second partial summary judgment, however, was granted in favor of SK & A. The district court determined that assets of the DKBP partnership which were in the hands of D & A had been fraudulently conveyed by the Dorr faction to successor business entities, the LLC and PC. (Case No. 93–157). The district court certified there was no just cause for delay and immediate appeals of both partial summary judgments were filed.

In effect, the district court declined to allow SK & A to wind up the affairs of DKBP under the Wyoming Uniform Partnership Act. Under the Uniform Fraudulent Conveyances Act, the district court then determined that the partial summary judgment relief granted in favor of SK & A was sufficient to permit SK & A to marshall the DKBP partnership assets.

## III. DISCUSSION

■■■ "In evaluating the propriety of a summary judgment, we determine whether there is no genuine issue of material fact and whether the prevailing party is entitled to judgment as a matter of law." *Prudential Preferred Properties v. J And J Ventures, Inc.*, 859 P.2d 1267, 1271 (Wyo.1993); Wyo.

---

3. The record presently consists of nine volumes of frequently redundant material. Noticeably absent from the designated record on appeal are the first and second amended complaints filed by SK & A and the answers filed by the Dorr faction. The answer to the third amended complaint contained in the designated record on ap-

peal is obviously a copy from the attorney's files. This copy, however, does not contain any indication that the document has been filed with the Clerk of the District Court. For purposes of this proceeding, we have assumed that the document was filed in a timely fashion.

R.Civ.P. 56(c). A grant of summary judgment is reviewed from the viewpoint favorable to the party opposing the judgment. *Smith v. Nugget Exploration, Inc.,* 857 P.2d 320, 322 (Wyo.1993). We accord no deference to the district court's decisions on issues of law. *Prudential Preferred Properties,* 859 P.2d at 1271.

Without the lacquer that has been liberally applied to obscure the issues and the fundamental role of the courts, we are left with two confirmed arbitration awards and two questions. The first question is prompted by the arbitration awards and the district court's first partial summary judgment, case No. 93–130. Is SK & A entitled to a second post-dissolution accounting to determine the distribution of profits of the DKBP partnership from continuing business during the winding-up stage of the partnership, in particular the profits earned by D & A or the profits earned by former partners of D & A in the Dorr faction from services performed on behalf of former clients of SK & A? The second question is prompted by the arbitration awards and the district court's second partial summary judgment, case No. 93–157. Is SK & A entitled to recover the assets of the DKBP partnership alleged to have been fraudulently conveyed by D & A to the Dorr faction and other business entities, the LLC and PC?

### A. CASE NO. 93–130

The DKBP partnership agreement provided a simple means to accomplish a division of the DKBP assets following dissolution:

Section 11.1  Terms of Dissolution

Should either Dorr or Keller, within 24 months of the formation of this partnership, wish to dissolve the partnership, either party may do so without the consent of the other. Notice of such intent to dissolve must be made with 30 days advance notice. *In this case only, each party shall take back those assets and/or liabilities it brought to the partnership. Fur-*

*thermore, Dorr shall be entitled to the accounts receivable, work in process, accounts payable, and etc. attributable to the Gillette office. Keller shall do the same for the Cheyenne office.* Such dissolution shall cancel all other provision of this document.

(Emphasis added.) The unambiguous language of the DKBP partnership agreement directs that each partner, upon dissolution, "shall take back those assets and/or liabilities it brought to the partnership." The mandatory language of this procedure should have effected a settling of the DKBP partnership affairs.

■ Upon the dissolution of a partnership, a partner is entitled to either the value of the partner's share of partnership property together with interest or, at the partner's election in lieu of interest, the partner's proportional share of profits from the use of partnership assets from the date of dissolution during the winding-up stage until termination. *Svihl v. Gress,* 216 N.W.2d 110, 115–117 (N.D.1974); *Martin v. Martin,* 77 Or. App. 226, 712 P.2d 820, 825 (1986). By permitting D & A and SK & A as the partners in DKBP to "take back" the assets and liabilities each brought to the partnership, the DKBP partnership agreement effectively returned the value of each partner's share of partnership property to the partner. The DKBP partnership agreement also allocated the *work in process,* accounts receivable, accounts payable and miscellaneous assets to the partners based upon the separate offices each contributed to the partnership effectively allocating the profits of the partnership until termination.[4] Therefore, the DKBP partnership agreement created a means to quickly wind up and terminate the partnership affairs.

Unfortunately, this process was not faithfully executed. The first arbitration award determined that D & A had wrongfully maintained possession of the Cheyenne *client base*

---

4. The DKBP partnership agreement does not define *work in process*. This court, therefore, can apply an ordinary meaning to this term. *Arizona v. City of Sheridan,* 408 P.2d 704, 706 (Wyo. 1965). In the context of the DKBP partnership agreement, we define *work in process* as: the

unfinished business of the dissolved partnership, including those contractual agreements for the performance of services which were in existence before the dissolution of the partnership. *See Bader v. Cox,* 701 S.W.2d 677, 682 (Tex.Ct.App. 1985); Wyo.Stat. § 17–13–605(a) (1988).

that should have been returned to SK & A upon dissolution.[5] The Cheyenne *client base*, according to the arbitration panel, was "the major asset which [SK & A] brought to the partnership." As a result, the arbitration panel awarded SK & A damages.

The first arbitration award includes damages to be paid by D & A to SK & A. This damage award includes $5,840.87 for unpaid compensation due SK & A from 1988 and $7,926.64 for unpaid compensation due SK & A in 1989. Of greater importance is the damage award of $91,396.27 in favor of SK & A. The first arbitration panel noted these were "[d]amages for violation of dissolution provisions."

In its findings of facts, the first arbitration panel found that SK & A had offered to sell D & A its interest in the DKBP partnership for $120,000 before dissolution, but D & A valued the Cheyenne *client base* at $100,000. The first arbitration panel determined that D & A had successfully kept the SK & A clients which constituted the "backbone" of the Cheyenne *client base*. According to the findings, "[SK & A] suffered damage in the amount of $90,000 by virtue of [D & A's] actions in contravention of its obligation to

return the Cheyenne client base to [SK & A]."

■ As a result of the first arbitration award, the damages suffered by SK & A for the loss of the value of the "major asset" SK & A contributed to the DKBP partnership, the Cheyenne *client base*, have been awarded. SK & A contributed the Cheyenne *client base* to the partnership and, on dissolution, was entitled to take back the assets it contributed. When D & A acted wrongfully to exclude SK & A from DKBP partnership assets, the first arbitration panel awarded damages to SK & A equal to the value of that portion of the asset which the panel found had been lost. Therefore, the damages awarded by the first arbitration panel are compensatory and constitute the amount of actual loss suffered by SK & A when D & A retained the Cheyenne *client base. See UNC Teton Exploration Drilling, Inc. v. Peyton*, 774 P.2d 584, 592 (Wyo.1989). However, these damages do not account for all the damages suffered by SK & A.

The Dorr faction advocates the position that the first arbitration award, dated August 24, 1989, effectively settled the affairs of the partnership and, thus, it was terminated.[6]

---

5. The arbitration panel adopted the term *client base* to describe the value of the practices contributed as assets by D & A and SK & A to DKBP. However, a more accurate term for the asset being valued is *goodwill*. Goodwill represents an intangible asset that refers to the ability of a professional firm to attract clients as a result of the firm's name, reputation, location, managerial skill, and technological resources. BLACK'S LAW DICTIONARY 694–95 (6th ed. 1990). The accepted rule has recognized that professional partnerships do not have a *goodwill* asset. *Lyon v. Lyon*, 246 Cal.App.2d 519, 54 Cal.Rptr. 829, 832 (1966); *Craver v. Nakagama*, 94 N.C.App. 158, 379 S.E.2d 658, 660 (1989). This rule is consistent with the position that a client's files belong to the client, and the professional partnership may not withhold the files to restrict the client's access to other providers. *See Hoover v. Crippen*, 151 Ill.App.3d 864, 105 Ill.Dec. 8, 12, 503 N.E.2d 848, 852 (1987) (requiring surrender of accounting partnership's files on written request of client). However, *goodwill* may be valued as an intangible asset in an accounting partnership when the facts and circumstances show an exception to the general rule is intended by the parties. *Stefanski v. Gonnella*, 15 Mass.App. Ct. 500, 446 N.E.2d 734, 736–37 (1983); *Jackson v. Caldwell*, 18 Utah 2d 81, 415 P.2d 667, 670

(1966). *Compare Fraser v. Bogucki*, 203 Cal. App.3d 604, 250 Cal.Rptr. 41, 44–45 (1988) (holding legal partnership did not have a *goodwill* asset which could be sold) with *Howard v. Babcock*, 6 Cal.4th 409, 25 Cal.Rptr.2d 80, 863 P.2d 150 (1993) (acknowledging that change in California Rules of Professional Conduct may permit sale of law firm *goodwill* in certain circumstances). The finding of the first arbitration panel that the DKBP partnership valued *goodwill* in the form of a *client base*, therefore, is binding on this court.

6. It was not illogical to initially argue that the first arbitration award, awarded SK & A a sum sufficient to buy out its interest in DKBP. The second arbitration award, however, clarified any ambiguity and provided, among other things, that DKBP was not terminated by the first award, that the *client base* of the Cheyenne and Gillette offices of DKBP was an asset of the partnership, and an accounting was required. The two arbitration awards were confirmed by the district court, the orders of confirmation were not appealed and, thus, they became the law of the case. Neither a trial court nor an appellate court may properly ignore arbitration awards. We are bound to give effect to both arbitration awards.

This stance may present a tactical advantage in light of the subsequent bankruptcy proceedings involving D & A; however, we do not think the arbitrators intended to repeal Wyo.Stat. § 17-13-602 (1989), which provides: "On dissolution the partnership is not terminated, but continues until the winding up of the partnership affairs is completed."

The DKBP partners shared profits in proportion to the relative strength of their respective practices in Cheyenne and Gillette. If the dissolution provision of the partnership agreement had been followed, each partner should have received the proportional share of the profits for *work in process* each was entitled to until termination. However, this provision was not followed. Moreover, the first arbitration award does not allocate damages to SK & A for the lost profits from continuing business of the DKBP partnership. *See JBC of Wyoming Corp. v. City of Cheyenne*, 843 P.2d 1190, 1195 (Wyo.1992) (noting that damages for breach of contract include compensatory and consequential damages). Therefore, the first arbitration award did not terminate the partnership.

In *Weisbrod v. Ely*, 767 P.2d 171, 174 (Wyo.1989), we noted that dissolution is the first of three stages in ending a partnership. Following dissolution, the next two stages are winding up and termination. *Id.* "Generally, winding up encompasses the liquidation of partnership assets, collection and payment of debts, and distribution of the surplus to the partners." *Id.* The second arbitration panel specifically concluded that, as a matter of law, the affairs of the DKBP partnership had not been wound up. We agree.

SK & A contends that following dissolution, during the winding-up stage, D & A owed a continuing fiduciary duty to SK & A as partners in DKBP to not run the business for their own benefit, and account as a trustee to SK & A for unfinished business. Specifically, SK & A seeks an accounting of all profits derived from clients of DKBP from the date of dissolution to the as yet undetermined date of final settlement and termination. This accounting would result in the termination of the DKBP partnership. The Dorr faction contends that SK & A is not

entitled to any profits from the services performed following dissolution by D & A or the Dorr faction in behalf of clients of DKBP.

The efforts of D & A to prevent SK & A from sharing the profits of DKBP's continuing business during the winding-up stage of the partnership represent a breach of fiduciary duties. Wyo.Stat. § 17-13-404(a) (1989) provides:

> (a) Every partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property.

The official comment to this section of the Uniform Partnership Act provides an instructive illustration of legislative intent:

> For instance: A, B and C are partners; A, as a result of a transaction connected with the conduct of the partnership, has in his hands, so that it may be traced, a specific sum of money or other property. A is insolvent. Is the claim of the partnership against A a claim against him as an ordinary creditor, or is it a claim to the specific property or money in his hands? The words, "and hold as trustee for the partnership any profits," indicate clearly that the partnership can claim as their own any property or money that can be traced.

Unif.Partnership Act § 21, Official Cmt., 6 U.L.A. 258 (1969).

D & A and SK & A established a partnership to perform accounting services. When disputes arose, the partnership dissolved. SK & A considered the profit from continuing services performed for the clients of DKBP in Cheyenne and Gillette to be an asset of the DKBP partnership. Apparently, the Dorr faction did not. Therefore, D & A breached its fiduciary duty to SK & A.

During the winding-up stage, D & A filed for bankruptcy protection and the individual partners of D & A set up new business entities and apparently continued performing services for some DKBP clients without sharing the profits. The Dorr faction, Mark Dorr, Barbara Elizabeth Dorr, Steven K.

Bentley and Stephen H. Pecha, were the general partners of D & A. The D & A partnership was liable for the profits earned from continuing business of the DKBP partnership. WYO.STAT. § 17–13–404(a). The individual partners of D & A, the Dorr faction, were also jointly and severally liable for the profits D & A was charged with holding as a trustee for the DKBP partnership. WYO. STAT. § 17–13–307(a).

The appropriation of DKBP partnership profits by D & A and the Dorr faction constituted a breach of fiduciary duty. WYO.STAT. § 17–13–404(a) (1989). There is a substantial limitation, however, on the scope of the fiduciary duty owed by D & A and the Dorr faction to SK & A. SK & A wrongly contends that it is entitled to a recovery of all profits realized by D & A or the Dorr faction from services performed for clients of DKBP following dissolution. This is not an accurate statement of the law.

■ Dissolution of a partnership generally terminates all authority of any partner to act for the partnership, with the exception of activities necessary to wind up partnership affairs "or to complete transactions begun" but not finished at the time of dissolution. WYO.STAT. § 17–13–605(a) (1988). As applied to partners in a professional firm, this *work in process* rule creates a specific obligation and a specific limitation.

■ The obligation the *work in process* rule creates is that during the winding-up stage, the individual partners have a fiduciary duty to collect and allocate fees for work of the partnership that continued after dissolution. *Resnick v. Kaplan*, 49 Md.App. 499, 434 A.2d 582, 586–88 (1981); *Seale v. Sledge*, 430 So.2d 1028, 1032 (La.App.1983). "A contractual agreement for the performance of services in existence at the dissolution of a partnership is unfinished business of the dissolved partnership, and the partners owe a fiduciary duty to wind up that business, if possible, and to refrain from taking action for purely personal gain." *Bader v. Cox*, 701 S.W.2d 677, 682 (Tex.App.1985). The court in *Resnick*, 434 A.2d at 586–88, correctly applied the *work in process* rule to professional fees earned by members of a legal partnership. Following dissolution, fees earned by the partners for services to partnership clients had to be collected and divided according to the partnership agreement until work was completed on those client files. *Id.* at 587–88.

■ The limitation of the *work in process* rule is that fees for new business, even those services performed for clients of the dissolved partnership, are not collected and divided as an asset of the dissolved partnership. *See, e.g., Jewel v. Boxer*, 156 Cal. App.3d 171, 203 Cal.Rptr. 13, 18 (1984) (distinguishing between unfinished business of dissolved partnership and new business). A reasonable balance is struck in unfinished business litigation between a partner's right to pursue his own business after dissolution of a partnership and the duty owed to former partners. *See, e.g., Turner v. Kaplan*, 602 S.W.2d 460, 464 (Mo.App.1980) (holding new business transactions of partners undertaken after dissolution of partnership were not partnership transactions). " 'The partner may take for his own account new business even when emanating from clients of the dissolved partnership and the partner is entitled to the reasonable value of the services in completing the partnership business, but he may not seize for his own account the business which was in existence during the term of the partnership.' " *Fraser v. Bogucki*, 203 Cal.App.3d 604, 250 Cal.Rptr. 41, 45 (1988) (quoting *Rosenfeld, Mayer & Susman v. Cohen*, 146 Cal.App.3d 200, 194 Cal.Rptr. 180, 192 (1983), disapproved on other grounds, *Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 28 Cal.Rptr.2d 475, 869 P.2d 454, 464 n. 10 (1994)).

■ Public policy directs that the *work in process* rule must be limited as applied to dissolved professional partnerships. We agree that individual partners have a fiduciary duty to collect and allocate fees for continuing partnership work after dissolution of a partnership. *Resnick*, 434 A.2d at 586–88. The completion of unfinished business and liquidation of partnership assets are among the purposes of the winding-up stage of a partnership. WYO.STAT. § 17–13–605(a). However, clients of a professional partnership form personal relationships with the in-

dividuals who provide services on their behalf. Frequently, these personal relationships are the basis for selecting which firm or business entity is utilized. The fact that a client continues working with the same individual on new business does not extend the fiduciary duty to share the profits with the dissolved partnership indefinitely. *Rosenfeld*, 194 Cal.Rptr. at 192.

■ D & A and the Dorr faction breached a fiduciary duty owed to SK & A to hold as a trustee any profits earned from continuing business of DKBP. Therefore, SK & A is entitled to a second post-dissolution accounting under Wyo.Stat. § 17–13–405 (1989), which provides:

(a) Any partner shall have the right to a formal account as to partnership affairs:

(i) *If he is wrongfully excluded from the partnership business or possession of its property by his copartners;*

(ii) If the right exists under the terms of any agreement;

(iii) As provided by W.S. 17–13–404;

(iv) Whenever other circumstances render it just and reasonable.

(Emphasis added).

The scope of the accounting is determined by the parties' duties to each other and to the DKBP partnership. According to the second arbitration award, SK & A has a duty to marshall the remaining assets of DKBP for the payment of DKBP debts and distribution to the partners of any net proceeds. *Larsen v. Sjogren*, 67 Wyo. 447, 462, 226 P.2d 177, 181 (1951). Therefore, the accounting should establish the present market value of any tangible or intangible assets of DKBP, including the value of the *client base* that we have identified as *goodwill*. These assets, which were not previously distributed by the first arbitration award, may be held by SK & A, D & A or the Dorr faction. Additionally, D & A and the Dorr faction must account to SK & A for any post-dissolution profits earned from continuing business of the DKBP partnership under the *work in process* rule. Similarly, SK & A must account to D & A for any post-dissolution profits earned from continuing business of the DKBP partnership. Debts of the DKBP partnership

must be paid and any profits must be distributed in accord with the provisions of the DKBP partnership agreement. *Resnick*, 434 A.2d at 587–88. Under the terms of the DKBP partnership agreement, D & A received seventy-five percent of the profits and SK & A received twenty-five percent of the profits. Therefore, the bankruptcy estate of D & A held by the Chapter 7 trustee will be entitled to seventy-five percent of the value of any DKBP assets that may be accounted for and seventy-five percent of the profits from any continuing business of the DKBP partnership since dissolution on May 4, 1989. Presumably, this money will be available for the payment of D & A creditors, including SK & A. SK & A will be entitled to twenty-five percent of the value of any DKBP assets that may be accounted for and twenty-five percent of the profits earned for continuing business of the DKBP partnership during this same time period.

We reverse the summary judgment granted in favor of the Dorr faction by the district court. We remand case No. 93–130 with directions that the district court order a partial summary judgment in favor of SK & A permitting a post-dissolution accounting for the purposes outlined in this opinion.

### B. CASE NO. 93–157

■ To this point, our decision has considered the interests of SK & A and D & A in the profits of continuing business of the DKBP partnership from the date of dissolution of the partnership during the winding-up stage until termination. Next, we turn to the claimed interest of SK & A in the assets of the DKBP partnership held by D & A and the Dorr faction.

SK & A maintains that the DKBP partnership assets were fraudulently conveyed by D & A to the Dorr faction or subsequent business entities. Before the confirmation of the first arbitration award by the district court, D & A sought bankruptcy protection. Barbara Elizabeth Dorr and Stephen H. Pecha, two of the members of the Dorr faction, who were general partners in D & A, also sought bankruptcy protection in March of 1990. However, SK & A contends that before the filing of these bankruptcy petitions, the Dorr

faction fraudulently conveyed the DKBP assets held by D & A to a limited liability company they had formed, the LLC. *See* Footnote 1, *supra.* After the D & A bankruptcy petition was filed, SK & A again contends that the Dorr faction fraudulently conveyed the DKBP assets from the LLC to a professional corporation they had formed, the PC. As a result of these allegedly fraudulent conveyances, SK & A contends D & A was rendered insolvent.

The Dorr faction asserts that no assets were fraudulently conveyed. Instead, they argue that D & A had obvious financial difficulties and attempted to restructure its debt with a Chapter 11 bankruptcy. When attempts to restructure proved impossible, the Chapter 7 bankruptcy was filed. As a result of the bankruptcy petitions, the Dorr faction declares that the assets of D & A were delivered to a secured creditor. The Dorr faction argues that the continued operation of an accounting practice by the former general partners of D & A did not constitute a fraudulent conveyance.

The district court granted a partial summary judgment in favor of SK & A ruling that the Dorr faction fraudulently conveyed the assets of the DKBP partnership which were held by the D & A partnership to other business entities or themselves. The district court granted SK & A a lien on all assets or proceeds from the assets of the DKBP partnership identified in the second arbitration award.

As enacted in Wyoming, the Uniform Fraudulent Conveyance Act (hereinafter UFCA) prohibits fraudulent transfers of partnership property:

(a) Every conveyance of partnership property and every partnership obligation incurred when the partnership is or will be thereby rendered insolvent, is fraudulent as to partnership creditors, if the conveyance is made or obligation is incurred:

(i) To a partner, whether with or without a promise by him to pay partnership debts; or

(ii) To a person not a partner without fair consideration to the partnership as distinguished from consideration to the individual partners.

WYO.STAT. § 34–14–109(a) (1990). The remedy provided by the UFCA reaches a broad range of transactions. " 'Conveyance' includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance[.]" WYO.STAT. § 34–14–102(a)(ii) (1990).

Fair consideration is said to be given when one of the conditions in WYO.STAT. 34–14–104(a) is satisfied:

(a) Fair consideration is given for property, or obligation:

(i) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or

(ii) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

"The only way of determining actual intent to hinder or delay creditors is by a consideration of the circumstances surrounding the transaction." *Matter of Estate of Reed,* 566 P.2d 587, 591 (Wyo.1977).

The creditor's remedies provided by the UFCA depend upon whether the claim has matured and include

setting the conveyance aside to the extent necessary to satisfy the claim or disregarding the conveyance and attaching or levying upon the property conveyed (where claim has matured); restraining defendant from disposing of the property; appointing a receiver to take charge of the property; setting the conveyance aside; or making any order which the circumstances of the case may require.

*Headen v. Miller,* 141 Cal.App.3d 169, 190 Cal.Rptr. 198, 200 (1983). *See also* WYO. STAT. §§ 34–14–110(a) and 34–14–111(a) (1990).

The purpose of the UFCA is to prevent an insolvent debtor from placing property outside the reach of creditors while still enjoying the benefits of the property. *United States v. Mazzara,* 530 F.Supp. 1380, 1383

(D.N.J.1982) (applying New Jersey law). The UFCA, therefore, is a creditor's remedy that may be analogized to a state bankruptcy law. *Hopfan v. Knauth,* 156 Misc. 545, 282 N.Y.S. 219, 225 (N.Y.1935). It provides: a means to void preferential payments by a debtor to one creditor, Wyo.Stat. § 34–14–105 (1990); a means to void conveyances made without fair consideration, Wyo.Stat. § 34–14–107 (1990); or a means to void conveyances which are intended to hinder, delay or defraud present or future creditors, Wyo. Stat. § 34–14–108 (1990).

SK & A overreaches in arguing that it has a right to void any conveyance of DKBP assets and retain or resell the property under Wyo.Stat. § 34–14–109(a) (1990). Normally, specific partnership property is held as a tenancy in partnership in which each partner is a co-owner of the property. Wyo.Stat. § 17–13–502(a) (1989). Therefore, an assignment by one partner of specific partnership property, without the consent of the other partners, is void. *Columbia Mortgage Co. v. Hsieh,* 42 Wash.App. 114, 708 P.2d 1226, 1229 (1985) (collecting cases). However, the language of the DKBP partnership agreement altered this rule upon dissolution. Except for the DKBP assets specifically required by the first arbitration award to be returned to SK & A, D & A was entitled to retain the remaining DKBP assets and pay damages to SK & A for the loss of those assets.

Following the confirmation of the first arbitration award, SK & A became a judgment creditor of the D & A partnership entitled to $105,163.78. Wyo.Stat. § 1–36–116 (1988). While these damages represent the value of the SK & A share of the DKBP assets, the damage award does not entitle SK & A to recover the specific assets of DKBP from D & A or the Dorr faction under the UFCA as a matter of law. The damage award did not make SK & A a creditor of the DKBP partnership. SK & A is rather a creditor of D & A as explained above. We must, therefore, consider if the district court's grant of partial summary judgment may be sustained on any other legal ground supported by the record. *Miller v. Campbell County,* 854 P.2d 71, 75 (Wyo.1993).

As a creditor of D & A, SK & A may be entitled to apply Wyo.Stat. § 34–14–109(a) in an attempt to establish a fraudulent conveyance of D & A partnership property. In order to do so, SK & A would have to prove: (1) a conveyance, (2) of D & A partnership property, (3) was made to a partner or to a person not a partner without fair consideration, (4) which rendered the partnership insolvent. Wyo.Stat. § 34–14–109(a). The proof contained in the record on appeal, however, fails to conclusively establish a fraudulent conveyance. *Strom v. Felton,* 76 Wyo. 370, 387–88, 302 P.2d 917, 923–24 (1956). *See Jurkovich v. Estate of Tomlinson,* 843 P.2d 1166, 1172–74 (Wyo.1992) and *McDonald v. Anderson,* 261 Mont. 268, 862 P.2d 402, 405–06 (1993).

SK & A broadly argues that the actions of the Dorr faction in creating two additional business entities, the LLC and the PC, resulted in fraudulent conveyances. However, proof of any conveyance is totally absent. We have no specific evidence that any "payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance" occurred between D & A and the Dorr faction or the new business entities. Wyo.Stat. § 34–14–102(a)(ii). Also, if there was a conveyance, SK & A never established what specific D & A partnership property was transferred to the new business entities. The record contains only the conclusive allegation that the these new business entities were created by the Dorr faction. This is insufficient.

Furthermore, the UFCA mandates a specific test to determine if a partnership is rendered insolvent by an allegedly fraudulent conveyance:

(b) In determining whether a partnership is insolvent there shall be added to the partnership property the present fair salable value of the separate assets of each general partner in excess of the amount probably sufficient to meet the claims of his separate creditors, and also the amount of any unpaid subscription to the partnership of each limited partner, provided the present fair salable value of the assets of

such limited partner is probably sufficient to pay his debts, including such unpaid subscription.

WYO.STAT. § 34–14–103(b) (1990). The record is devoid of any information that indicates the assets of each general partner in D & A were considered in making the bare allegation that D & A was rendered insolvent by any allegedly fraudulent conveyances. The record does indicate that D & A was a highly leveraged operation with numerous debts. This alone may account for its bankruptcy.

■ As the party moving for a partial summary judgment, SK & A has failed to meet its burden of making a *prima facie* showing that no genuine issue of material fact exists. *Moore v. Labnau*, 855 P.2d 1245, 1248 (Wyo.1993). Therefore, the summary judgment granted in favor of SK & A is reversed. We note again, that in a case such as this involving issues of fraud and intent, summary judgment is "notoriously inappropriate." *Cordova v. Gosar*, 719 P.2d 625, 635 (Wyo.1986) (citation omitted).

## C.  ATTORNEY FEES

Finally, SK & A raises the issue: "Whether Appellee, Smith, Keller & Associates, is entitled to attorney's fees and damages as provided for in Rule 10.05, Wyoming Rules of Appellate Procedure." [7] We decline to impose sanctions. Were there an appropriate rule, we would assess costs and damages on both parties (perhaps not equally) because of the burden they have put on the courts, both state and federal. Judge O'Brien exercised restraint in his mild chastisement of the parties when he said:

Stripping this of all the legal complexity which has been heaped on it from both sides, and I think principally from starting

with Dorrs' side, Dorr seeks to take bankruptcy and be discharged of all obligations and yet keep all the assets. And that's just wrong.

We agree with Judge O'Brien. Settling the affairs among the combatants here should have been a relatively simple matter. Upon dissolution on May 4, 1989, the assets of DKBP should have been marshalled, an accounting accomplished, partnership debts paid and remaining assets, if any, divided according to the partnership agreement. That, however, is too simple for people who have a predilection to do battle.

## IV.  CONCLUSION

The myriad of legal theories presented by the parties to this litigation reveal opposing conclusions. Parties supposedly attempting to settle honest disputes are the same parties seeking to obstreperously obfuscate issues, delay confronting their obligations to one another and generally avoiding justice. Parties searching for fairness are abusing the system and presenting the appearance of seeking a greedy form of vengeance. The remarkable enigma in these opposing conclusions is they result from partnership.

In case No. 93–130, we inquired, whether SK & A is entitled to a second post-dissolution accounting to determine the distribution of profits of the DKBP partnership from continuing business during the winding-up stage of the partnership, in particular the profits earned by D & A or the profits earned by former partners of D & A in the Dorr faction from services performed on behalf of former clients of SK & A. We have determined the answer is yes. Therefore, case No. 93–130 is *reversed and remanded*

---

7.  WYO.R.APP.P. 10.05 provides:
    If the judgment or appealable order is affirmed in a civil case, appellee shall recover the cost for publication of the brief with the cost to be computed at the rate allowed by law for making the transcript of the evidence. If the court certifies there was no reasonable cause for the appeal, a reasonable fee to be fixed by the appellate court shall also be taxed as part of the costs in the case. The fee shall not be less than one hundred dollars ($100.00) nor more than five thousand dollars

($5,000.00) to the counsel of appellee; and damages to appellee, in such sum as may be reasonable, shall not exceed two thousand dollars ($2,000.00) unless the judgment, or appealable order directs the payment of money and execution was stayed, when in lieu of such penalty, it shall bear additional interest at a rate not to exceed five percent (5%) per annum for the time for which it was stayed, to be ascertained and awarded by the appellate court.

for entry of a partial summary judgment which conforms to this opinion.

In case No. 93–157, we asked, whether SK & A is entitled to recover the assets of the DKBP partnership alleged to have been fraudulently conveyed by D & A to the Dorr faction and other business entities, the LLC and PC. The answer is no. Therefore, case No. 93–157 is *reversed and remanded.*